AO 242 (Rev. 09/17) Petition for a Writ of Habeas Corpus Under 28 U.S.C. § 2241

# UNITED STATES DISTRICT COURT
for the
## Southern District of Illinois

|  |  |
|---|---|
| PATRICK A. BYERS, JR. <br> *Petitioner* | ) ) ) ) ) ) ) ) ) ) |
| v. | Case No. 22-369-JPG <br> *(Supplied by Clerk of Court)* |
| D. SPROUL, WARDEN <br> *Respondent* <br> *(name of warden or authorized person having custody of petitioner)* |  |

## PETITION FOR A WRIT OF HABEAS CORPUS UNDER 28 U.S.C. § 2241
### Personal Information

1. (a) Your full name:   Patrick Albert Byers, Jr.
   (b) Other names you have used:   Pat
2. Place of confinement:
   (a) Name of institution:   USP Marion
   (b) Address:   4500 Prison Road
   Marion, Illinois 62959
   (c) Your identification number:   43310-037
3. Are you currently being held on orders by:
   ☒ Federal authorities       ☐ State authorities       ☐ Other - explain:

4. Are you currently:
   ☐ A pretrial detainee (waiting for trial on criminal charges)
   ☒ Serving a sentence (incarceration, parole, probation, etc.) after having been convicted of a crime
   If you are currently serving a sentence, provide:
   (a) Name and location of court that sentenced you:   UNITED STATES DISTRICT COURT
   BALTIMORE, MD
   (b) Docket number of criminal case:   1:08-CR-00056-RDB
   (c) Date of sentencing:   May 4, 2009
   ☐ Being held on an immigration charge
   ☒ Other *(explain)*:   Held on a conviction from the District Court in
   Baltimore, MD

### Decision or Action You Are Challenging

5. What are you challenging in this petition:
   ☐ How your sentence is being carried out, calculated, or credited by prison or parole authorities (for example, revocation or calculation of good time credits)

AO 242 (Rev. 09/17) Petition for a Writ of Habeas Corpus Under 28 U.S.C. § 2241

## PETITION FOR A WRIT OF HABEAS CORPUS UNDER 28 U.S.C. § 2241

### Instructions

1. **Who Should Use This Form.** You should use this form if
   - you are a federal prisoner and you wish to challenge the way your sentence is being carried out *(for example, you claim that the Bureau of Prisons miscalculated your sentence or failed to properly award good time credits)*;
   - you are in federal or state custody because of something other than a judgment of conviction *(for example, you are in pretrial detention or are awaiting extradition)*; or
   - you are alleging that you are illegally detained in immigration custody.

2. **Who Should Not Use This Form.** You should not use this form if
   - you are challenging the validity of a federal judgment of conviction and sentence *(these challenges are generally raised in a motion under 28 U.S.C. § 2255)*;
   - you are challenging the validity of a state judgment of conviction and sentence *(these challenges are generally raised in a petition under 28 U.S.C. § 2254)*; or
   - you are challenging a final order of removal in an immigration case *(these challenges are generally raised in a petition for review directly with a United States Court of Appeals)*.

3. **Preparing the Petition.** The petition must be typed or neatly written, and you must sign and date it under penalty of perjury. **A false statement may lead to prosecution.**

4. **Answer all the questions.** You do not need to cite law. You may submit additional pages if necessary. If you do not fill out the form properly, you will be asked to submit additional or correct information. If you want to submit any legal arguments, you must submit them in a separate memorandum. Be aware that any such memorandum may be subject to page limits set forth in the local rules of the court where you file this petition. If you attach additional pages, number the pages and identify which section of the petition is being continued. All filings must be submitted on paper sized 8½ by 11 inches. **Do not use the back of any page.**

5. **Supporting Documents.** In addition to your petition, you must send to the court a copy of the decisions you are challenging and a copy of any briefs or administrative remedy forms filed in your case.

6. **Required Filing Fee.** You must include the $5 filing fee required by 28 U.S.C. § 1914(a). If you are unable to pay the filing fee, you must ask the court for permission to proceed in forma pauperis – that is, as a person who cannot pay the filing fee – by submitting the documents that the court requires.

7. **Submitting Documents to the Court.** Mail your petition and _____ copies to the clerk of the United States District Court for the district and division in which you are confined. For a list of districts and divisions, see 28 U.S.C. §§ 81-131. All copies must be identical to the original. Copies may be legibly handwritten.

   If you want a file-stamped copy of the petition, you must enclose an additional copy of the petition and ask the court to file-stamp it and return it to you.

8. **Change of Address.** You must immediately notify the court in writing of any change of address. If you do not, the court may dismiss your case.

AO 242 (Rev. 09/17) Petition for a Writ of Habeas Corpus Under 28 U.S.C. § 2241

☐ Pretrial detention

☐ Immigration detention

☐ Detainer

☒ The validity of your conviction or sentence as imposed (for example, sentence beyond the statutory maximum or improperly calculated under the sentencing guidelines)

☐ Disciplinary proceedings

☒ Other *(explain)*:  Actual Innocence Claim and Wrongful Conviction Claim for charge 18 USC § 1512

6.  Provide more information about the decision or action you are challenging:

(a)  Name and location of the agency or court:  I am challenging my conviction from the District Court in Baltimore, Maryland

(b)  Docket number, case number, or opinion number:  1:08-CR-00056-RDB

(c)  Decision or action you are challenging *(for disciplinary proceedings, specify the penalties imposed)*:

I am challenging the fact that I am ACTUALLY and FACTUALLY INNOCENT of the crime of 18 USC § 1512 "Murder of Government Witness"

(d)  Date of the decision or action:  April 17, 2009

### Your Earlier Challenges of the Decision or Action

7.  **First appeal**

Did you appeal the decision, file a grievance, or seek an administrative remedy?

☐ Yes     ☒ No

(a)  If "Yes," provide:

(1)  Name of the authority, agency, or court:     N/A

(2)  Date of filing:                              N/A
(3)  Docket number, case number, or opinion number:     N/A
(4)  Result:                                      N/A
(5)  Date of result:                              N/A
(6)  Issues raised:                               N/A

(b)  If you answered "No," explain why you did not appeal:  My conviction for all counts was appealed and the § 1512 issue was not raised.

8.  **Second appeal**

After the first appeal, did you file a second appeal to a higher authority, agency, or court?

☐ Yes          ☒ No

AO 242 (Rev. 09/17)  Petition for a Writ of Habeas Corpus Under 28 U.S.C. § 2241

(a)  If "Yes," provide:

    (1)  Name of the authority, agency, or court: _____ N/A _____

    (2)  Date of filing: _____ N/A _____
    (3)  Docket number, case number, or opinion number: N/A
    (4)  Result: _____ N/A _____
    (5)  Date of result: _____ N/A _____
    (6)  Issues raised: N/A

(b)  If you answered "No," explain why you did not file a second appeal:   My Appeal Attorney failed to file for certiorari

## 9. Third appeal

After the second appeal, did you file a third appeal to a higher authority, agency, or court?

☐ Yes      ☒ No

(a)  If "Yes," provide:

    (1)  Name of the authority, agency, or court: _____ N/A _____

    (2)  Date of filing: _____ N/A _____
    (3)  Docket number, case number, or opinion number: N/A
    (4)  Result: _____ N/A _____
    (5)  Date of result: _____ N/A _____
    (6)  Issues raised: N/A

(b)  If you answered "No," explain why you did not file a third appeal:   Appeal Attorney waited and the Statute of Limitations expired

## 10. Motion under 28 U.S.C. § 2255

In this petition, are you challenging the validity of your conviction or sentence as imposed?

☒ Yes      ☐ No

If "Yes," answer the following:

(a)  Have you already filed a motion under 28 U.S.C. § 2255 that challenged this conviction or sentence?

     ☒ Yes      ☐ No

AO 242 (Rev. 09/17) Petition for a Writ of Habeas Corpus Under 28 U.S.C. § 2241

If "Yes," provide:

(1) Name of court: United States District Court Baltimore, MD.

(2) Case number: RDB-12-2348

(3) Date of filing: August 7, 2012

(4) Result: Motion Denied

(5) Date of result: September 16, 2015

(6) Issues raised: Ineffective Assistance of Counsel for failure to Investigate and secure records. Ineffective Assistance for failing to secure records and footage from News Broadcast

(b) Have you ever filed a motion in a United States Court of Appeals under 28 U.S.C. § 2244(b)(3)(A), seeking permission to file a second or successive Section 2255 motion to challenge this conviction or sentence?

☒ Yes          ☐ No

If "Yes," provide:

(1) Name of court: United States Court Of Appeals for the Fourth Circuit

(2) Case number: Cannot Locate

(3) Date of filing: 2018

(4) Result: Denied without reason

(5) Date of result: 2019

(6) Issues raised: Use of False Testimony, Testimony by crooked Police Sergeant and Lack of Evidence

(c) Explain why the remedy under 28 U.S.C. § 2255 is inadequate or ineffective to challenge your conviction or sentence: I am time barred from filing a § 2255. I am now, raising the issue of ACTUAL and FACTUAL INNOCENCE OF all charges and § 2241 is proper vehicle for such claim(s)

11.    **Appeals of immigration proceedings**

Does this case concern immigration proceedings?

☐ Yes          ☒ No

If "Yes," provide:

(a) Date you were taken into immigration custody: N/A

(b) Date of the removal or reinstatement order: N/A

(c) Did you file an appeal with the Board of Immigration Appeals?

☐ Yes          ☐ No

AO 242 (Rev. 09/17) Petition for a Writ of Habeas Corpus Under 28 U.S.C. § 2241

If "Yes," provide:

(1) Date of filing: N/A

(2) Case number: N/A

(3) Result: N/A

(4) Date of result: N/A

(5) Issues raised: N/A

(d) Did you appeal the decision to the United States Court of Appeals?

☐ Yes          ☐ No

If "Yes," provide:

(1) Name of court: N/A

(2) Date of filing: N/A

(3) Case number: N/A

(4) Result: N/A

(5) Date of result: N/A

(6) Issues raised: N/A

12. **Other appeals**

Other than the appeals you listed above, have you filed any other petition, application, or motion about the issues raised in this petition?

☒ Yes          No

If "Yes," provide:

(a) Kind of petition, motion, or application: Actual innocence 2241 claim

(b) Name of the authority, agency, or court: United States District Court, S.D. Illinois

(c) Date of filing: June 2019

(d) Docket number, case number, or opinion number: N/A (Don't know)

(e) Result: Pending decision

(f) Date of result: N/A

(g) Issues raised: Supreme Court Rehaif decision, felon in possession

AO 242 (Rev. 09/17)  Petition for a Writ of Habeas Corpus Under 28 U.S.C. § 2241

### Grounds for Your Challenge in This Petition

13.    State every ground (reason) that supports your claim that you are being held in violation of the Constitution, laws, or treaties of the United States.  Attach additional pages if you have more than four grounds.  State the facts supporting each ground.  Any legal arguments must be submitted in a separate memorandum.

**GROUND ONE:** Actual Innocence of 18 USC § 1512 "Murder of Government Witness" where EVIDENCE proved there was no federal government interest for probable cause against "BYERS"
- see Memoranda

(a) Supporting facts *(Be brief. Do not cite cases or law.)*:

From the underlying murder case of Larry Haynes, Carl S. Lackl was not a government witness which goes to the heart of the united states of America's Case against "BYERS." Additionally. There was no investigatory involvement via federal agencies, suchas, DEA, ATF or FBI, For any federal interest in/on event(s) against "BYERS."

(b)  Did you present Ground One in all appeals that were available to you?

☐ Yes          ☒ No

**GROUND TWO:** Actual Innocence of 18 USC § 1512 "Murder of Government Witness" where there was no federal nexus to connect "BYERS" to events surrounding crimes
- see Memoranda

(a) Supporting facts *(Be brief. Do not cite cases or law.)*:

Like in many other prominent court rulings EVIDENCE exhibit in/on "BYERS" there was no federal investigation ongoing to garner federal charge. "BYERS" is prejudiced by a prosecution lacking evidence of it.

(b)  Did you present Ground Two in all appeals that were available to you?

☐ Yes          ☒ No

**GROUND THREE:** Actual Innocence of 18 USC § 1512 "Murder of Government Witness" for Incapacity to commit crimes, alleged
- see Momoranda

(a) Supporting facts *(Be brief. Do not cite cases or law.)*:

Concerning Mr. Carl Stanley Lackl, who wasn't a government witness, when he was killed. At that time "BYERS" was arrested and in detention as of 3/2006. Allegedly, Mr. Lackl was murdered, appx. 7/2/2007

(b)  Did you present Ground Three in all appeals that were available to you?

☐ Yes          ☒ No

AO 242 (Rev. 09/17) Petition for a Writ of Habeas Corpus Under 28 U.S.C. § 2241

**GROUND FOUR**: Actual Innocence of 18 USC § 1512 "Murder of Government Witness" due to TRUTH surfacing about alleged crime(s)
- see Memoranda and Exhibits

(a) Supporting facts *(Be brief. Do not cite cases or law.)*:

All the above restated for cause with the attachment of Exhibits illustrating material EVIDENCE of my factual and actual innocence and, now, some of this EVIDENCE is written in a published book; it means, that the proof, can nolonger be overlooked or passed-over.

(b) Did you present Ground Four in all appeals that were available to you?
☐ Yes            ☒ No

14.  If there are any grounds that you did not present in all appeals that were available to you, explain why you did not:    I am not learned in the law; needing assistance to identify claim(s) and requiring assistance to present cause(s), so that I may be heard.

**Request for Relief**

15. State exactly what you want the court to do:    My entire conviction Should be over turned and i be granted a new trial. It is not on me to prove the elements of a violation of 18 USC § 1512(a)(1)(c) it is the governments responsibility. The government has not, And cannot prove that Mr. Carl Lackl was a government witness. My conviction Shall not rest on the fact that i am innocent. I am not guilty of the murder of a government witness.

AO 242 (Rev. 09/17) Petition for a Writ of Habeas Corpus Under 28 U.S.C. § 2241

## Declaration Under Penalty Of Perjury

If you are incarcerated, on what date did you place this petition in the prison mail system: November 23, 2021

I declare under penalty of perjury that I am the petitioner, I have read this petition or had it read to me, and the information in this petition is true and correct. I understand that a false statement of a material fact may serve as the basis for prosecution for perjury.

Date: 11-23-21

_Patrick Byers_
*Signature of Petitioner*

_____
*Signature of Attorney or other authorized person, if any*

Beyers
4330-037

In the United States District Court
for the Southern District of Illinois

PATRICK A. BYERS, Jr.,
        Petitioner

    v.               -->   Case No.

UNITED STATES OF AMERICA
        Respondent

Memorandum In Support of
Motion under 28 USC § 2241

Petitioner, comes on this Memorandum in support of his Motion filed under 28 USC § 2241 to demonstrate Claim for ACTUAL INNOCENCE. Whereas issues revolve around, turn of events EVIDENCING the government (i.e. United States, United States of America, Respondent) committing crimes, resulting in a complete sea change.

Sea Change (e.g. turn of events) does not permit the Respondent to be found committing crimes, then, being able to have standing to bring a matter into court centered around same events of the prosecution(s).

Hereby. Petitioner asserts, he can demonstrate; (1) Actual Innocence, (2) Government's lack of EVIDENCE for 18 USC § 1512 charge and (3) Attorneys' failure to share data/files rising to SOCHA Claim, requiring court intervention to secure relief for defects in/on institutions for prosecution(s).

Some back ground facts. Petitioner plead not guilty to all charges listed in the original indictment and the superseding indictment, then proceeded to trial in 2009. In April, a jury returned a verdict of guilty and he was sentenced to four life terms of imprisonment on, May 4, 2009.

The Guilty verdict was based, solely, on the Government's hype man, known as a star witness; Police Srgt. Wayne E. Jenkins for City of Baltimore Gun Task Force. Jenkins, was, subsequently, sentenced to 25 years in Federal Prison. Charges against Jenkins are inclusive of Falsely Detaining, Stealing, False (i.e. Faking) Police Reports among other charges. Surprisingly, The Assistant United States Attorney who prosecuted Petitioner, retired soon, after, Srgt. Jenkins was indicted, reallizing case on "BYERS" was compromised.

Petitioner, earnestly, maintains his innocence, from the start

of his criminal proceedings.  Once, 'Byers,' became aware of the fact, the Government's star witness was Police Sergeant Wayne E. Jenkins, he immediately advised his lawyer that Jenkins was a dirty COP, who collected payments from drug dealers in return for protection and information.  Petitioner, reported, Jenkins was involved in other illegal activity(s) that he was aware of.  Court Appointed Attorney failed to investigate accusations or blow the Whistle on Jenkin's illegal activities. A more detailed search, disclosed Jenkins with others, sorta like a gang did "jump-outs" on people (joe-public) with their guns drawn.  This EVIDENCE is extraneous, however, is relevant for cause.

Shockingly.  Jenkins and his partners criminal conduct was, so, overwhelming and grip-ping, two Authors wrote a book about their activities.  Baynard Woods and Brandon Soderberg authored "I Got A Monster" as its title and "The rise and fall of America's most corrupt police squad" as its subtext for their book.

Now.  What this meas for EVIDENCE, of/on, 'Byers'' claim(s) for INNOCENCE, is that, EVIDENCE on his claim(s) is not, only, registered, the EVIDENCE, is copyrighted and authenticated as PUBLIC knowledge, as actual verifiable fact(s).

Attorneys have information and knowledge that "BYERS" wasn't the person committing crimes as alleged.  Cf.  'Byers' victim of over zealous prosecution.  Yet. Attorneys, prosecuted him, anyway.  Id.  FATAL DEFECTS.

Federal Question.  Can a crooked COP's testimony keep a man in prison for life?  Jenkins lied, under Oath, and he was convicted, sentenced to 25 years for executing crimes that gained him a life in Federal Prison.  His crimes are linked to my being convicted and sentenced.  Again.  Facts, in deed, compromise(s) case against "BYERS."

Amazingly.  Even, intrinsic EVIDENCE has changed, in favor of "BYERS'" immediate RELEASE.  This is the governments' EVIDENCE being removed, by recant.  For example; Marcus Pearson, who witnessed, previously, on behalf of the governments' claim that "BYERS" orchestrated the murder of "LACKL" for charge on 18 USC § 1512 violation, now recants his statement which in essence, burst the proverbial bubble to any claim(s) the government can hold over "BYERS."  So. At this point; "What is supporting the government's claim(s) against "BYERS"?  Re:  "nothing!"

Incidently.  T'was Marcus' third time coming forth to report evidence of his facts.  And, this time, he spoke to a local news paper "Baltimore Sun Reporter," Justin Fenton, in Sept., 2020.  Again.  Evidence shines light on 'Byers'' innocence, claim(s)

Page 2 of 5

Extraordinary Circumstance(s) exist.  These circumstance(s) make for extreme prejudice; worsened by the fact that for an alleged murder charged to Petitioner, his trial lawyer claimed he lost the AFFIDAVITS of, those, witnessess who did affirm and testify asto who the shooter was.  Now; this wasn't one person, this was many people.  Id.  Lack of care for duty and highly, exemplary, of Ineffective Assistance of Counsel.

Therefore.  Those prosecuting case, had no business ignoring Petitioner's facts and proof of CLAIMS of INNOCENCE!  Section 2241 is a proper vehicle to raise 'ACTUAL' INNOCENCE Claim.  See Boose v. Marske, 2019 U.S.Dist.Lexis 156342 (7th Cir. 2019).  Petitioner is, also, hopeful by Supreme Court Ruling in case, McQuiggin v. Perkins, 133 S.Ct. 1924; and, the reliance in/on decision can be RETROACTIVELY accepted and applied by its terms.

Mandatory Notice;  Take "Public Notice, as Mandatory" of fact, there, is/was seemingly, some sort of slant (could be hate or otherwise) against 'Byers.'  Whereas, Baltimore City Police was allowed means to craft EVIDENCE in/on "BYERS."  Then, on the other hand, the Executive Branch of Government  (i.e. Agencies, attorneys, prosecuting attorneys) were providing protection, even, looking the other-way while FACTS in/on "BYERS" were being molded, edited and manipulated, to create their federal cause.  Collectively.  They were able to invent a federal employee to, allegedly, garner charge 18 USC § 1512(C)(1)(A) on "BYERS."  Now, absent EVIDENCE, the prosecution's Claim avers "BYERS" murdered their government witness, Carl Stanley Lackl.

Severe, problematic issues persist with prosecution of the 18 USC § 1512 charge.  For one, Lackl wasn't a government employee (i.e. witness) to satisfy the prongs of the statute and two; in order to satisfy terms of the contract (i.e. statute) government's facts force "BYERS'" conduct, in order to be congruent, to rely on too many "WHAT-IFs" to satisfy the charge.  Id.  Fowler, 563 U.S. 668, 131 S.Ct. 2045 and Synder, 865 F.3d 490, 2017 U.S.App.-LEXIS 13402.  By all the above, 'Byers' should have had a fair hearing, with EFFECTIVE ASSISTANCE of counsel to not only safe-guard his INNOCENCE, but protect it as well.  Yet, what occurred with counsel assistance is befitting, only, of a horror movie, here.

Unless, you were forced to deal with all the political obstacles, maneuvers, hurdles and alike, you probably can't appreciate the experience(s) being described.

Then, when 'Byers' attempted to gain help and assistance through counsel; they (multiple attorneys) employed savy and ill-will to operate around their position of care, moving with callousness, no matter how traumatic  the occurrences.

Page 3 of 5

The accalades of the judges and attorneys handling transactions building the RECORD are, absolutely, horrific!  Institutions of justice were, in deed, closed-off to 'Byers' by those occupying positions of TRUST in/on behalf of the, then, DEFENDANT.  A debt is due/owed to 'Byers.'  By the example:  Look at what happened after trial with dealing with attorney assistance per Appeal.

The Appeal attorney expresses to 'Byers' ". . . the appeal is a slow moving process."  (See Aug. 12, 2009 letter by Marta K. Kahn, Esq.) is ever, a reason, to grant "BYERS" relief.  Here. The implication is that an APPEAL can't be taken, immediately, after a trial, which in legal terms, is an OUTRIGHT farce!

When 'Byers' made attempt to Appeal the shenanigans of, seemingly, outragious prosecutorial executions; the attorneys refused to share the files with him. Id.  Direct prejudice.

SOCHA CLAIM.  If 'Byers' was not allowed to have access to the files and information; the prejudice, is apparent.  'Byers' could not and have not been able to draft any meaningful motions, memorandas or briefs without access to the basic files underlying actions of government's charges.

'Byers' ("BYERS") is not a layman of the law.  Even, with court papers; he (it) would, still, require assistance to challenge those defects of the institution meted against him (it) by the attorneys and others.  In SOCHA, he did receive his court papers. Todate.  'Byers' has not received any papers requested from attorneys which would allow him to create instruments having merit to effect APPEAL.  Hurdles, before 'Byers' are more than, INSURMOUNTABLE.  court, can not fault "BYERS" via Principal-Agent Doctrine, for its own interference with attorney-client relation-ship, evinced by Kahn letter.  by all precocious events, 'Byers' should be releaved of all association with contract(s) and derivative transactions associated with cause, forthwith.  See "SOCHA v. Boughton, 763 F.3d 674 (7th Cir. 2014)."

Again.  Time to submit claim of "actual INNOCENCE" is protected by "MCQUIGGIN v. PERKINS (2013).

CONCLUSION

Petitioner, 'Patrick Albert Byers' is actually innocent.  Any statements relied upon by the Government's hype man (i.e. star witness) (now Inmate) former Police Sergeant Wayne E. Jenkins shall not be used to uphold the conviction in/on this case.  The wiles of Dirty Cop Jenkins have been made known, inclusive of falsifying police reports.  Strike his testimony and "BYERS" would have to be, immediately, released.  -  If there was a case of actual "INNOCENCE," this would be one of them.

Page 4 of 5

Whereas counsel for DEFENSE did allow counsel for plaintiff
(United States of America, Inc.) to charge "BYERS" with a set
of taxable accounts absent verified EVIDENCE for their conviction,
a valid CONVICTION has not been ascertained and a challenge has
~~been proffered. Save covin, collusion and conspiracy events~~
could have never made it to a federal court.

## REQUEST FOR RELIEF

Declare that SOCHA is a 7th Circuit Presedenct and that "BYERS"
has demonstrated like circumstance(s) to illustrate D. SPROUL,
Warden, at USP Marion and the United States of America, is in
fact, holding him (it) in violation of U.S. Constitution or
U.S. Statutes.  Whereby, 'Byeres' demand an order of the court
upon the U.s. Marshal Service to deliver him (it) to the
community-at-large near Baltimore Maryland or demand order of
"REmand" with instruction to have case vacated; or, alternatively,
with instruction to hold a fair hearing, allowing him to prove
his INNOCENCE.

Patrick Byers

See Exhibits to support claims

Page 5 of 5

Exhibit 1

These letters are to and/or from former Attorneys William B. Purpura, Marta K. Kahn and Marc G. Hall. These letters are of me repeatedly asking Mr. Purpura and Ms. Kahn for my discovery/files to my case only to be ignored or told that i am not allowed to have my files. The other letters are of me asking Mr. Hall for certain information pertaining to my case file, only to have my letters ignored, And tell me via Attorney phone call that he does not have my discovery only Trial transcripts. Mr. Hall however did respond in form the form of a letter to my request to raise the issue that Carl Lackl was not a government witness and that the government did not have jurisdiction. Mr. Hall sent me a letter dated (July 14, 2010) Stating that he didn't think the jurisdiction was an issue, How wrong was he.

Also, The first and last page of the "Motion for Discovery" filed on March 21, 2016. Which was denied.

I have been writing the court-"Judge. Richard D. Bennett, The government and the federal public Defenders office since 2017, Not a Single response from none of them, Records, Docket/Pacer proves these letters. I can only believe that there are REASONS NO ONE WANTS ME to have my discovery/files because of the proof of innocence.

I have repeatedly ask the courts to appoint council, Denied and as for my recent letters to the courts asking again to appoint council, Ignored.

Patrick Byers

REQUEST TO STAFF

M. BAYLESS (UNIT MANAGER)                    20 JUNE, CE 2014

PATRICK BYERS                                43310037


PLEASE PROVIDE A COPY OF MY LEGAL MAIL

ENVELOPE THAT WAS SENT TO!

                    WILLIAM B. PURPURA
                    ATTORNEY AT LAW
                    EIGHT E. MULBERRY ST.
                    BALTIMORE, MD 21202

ON APRIL 26, 2014,

THANK YOU FOR YOUR KIND & PROMPT ATTENTION

TO THIS MATTER.


                        Attached

                        - MBayless
                            6-23-14



PURPLE HEART
FOREVER USA

Patrick Byers
Name
43310087
Reg. No.

☐
☒  Federal Correctional Institution
    P.O. Box 33
    Terre Haute, IN 47808
☐

Legal Mail

INMATE
IDENTIFICATION
CONFIRMED

43310-037
William B Purpura
Attorney At Law
Eight E Mulberry ST
Baltimore, MD 21202
United States

Patrick Albert Byers, Jr.                                    April 25, 2014
Reg. No. 43310-037
P.O. Box 33
Terre Haute, IN 47808

William B. Purpura, Jr.
Law Offices of William B. Purpura
Eight E. Mulberry St.
Baltimore, MD 21202

Re: Discovery

Dear Mr. Purpura,

I am currently deeply involved in my collateral attack. It is vitally important for me to equip myself with all the knowledge about my trial and appeal. In reviewing the enclosed letter from your associate it is required that I have a copy of this "discovery agreement" before I can proceed. Was this agreement expressed, implied, or verbal? Who were the parties and how and when was my consent applied?

Further I am copying you on my letter to the prosecution and ask only that you will place a curtesy call in follow-up to make sure that it was received and that action is being taken on my behalf.

Thank you for your kind attention.

                                        Sincerely,

                                        Patrick A. Byers

Bcc:

Patrick Byers
Reg#43310-037
USI Terre Haute
P.O. Box 33
Terre Haute, IN 47808

September 12, 2011

Mr. William Purpura
Attorney At Law
8 East Mulberry Street
Baltimore MD, 21205

RE: United States v. Byers, Cr No. RDB 08-056

Dear Mr. Purpura:

I was denied my direct appeal this past May, I am writing for the
purpose of obtaining my discovery. I was informed by Mr. Hahn that
you all would forward my files to new counsel if I had obtained
one. The few times that I spoke with said counsel, and asked for
copies of the Coleman, Haynes and Lackl discovery. He said he
didn't posses any discovery materials, just transcripts. So if
you will, can you please figure out how to get me copies of my
discovery, there is very important information in my discovery,
that I need for the beginning for my 2255 petition.

/s/ _Patrick Byers_

**The Law Office of**
**Marta K. Kahn, LLC**

PO Box 65071
Baltimore, MD 21209
410-299-6966    mkkahn@yahoo.com
Fax: 443-927-7216

October 26, 2009

Patrick Albert Byers, Jr.
Inmate Number 43310-037
FCI Terre Haute
Federal Correctional Institution
PO Box 33
Terre Haute, IN  47808

Dear Mr. Byers,

I am in receipt of your letter of October 14, 2009.  Although you refer to it as your third request for materials pertaining to your case, this is the first letter I have ever received from you at any time, on any subject.

As I told you in my previous letter to you, and as I have told your mother and your aunt twice each on the phone, we do not have the transcripts in your case.  The transcripts do not simply appear at the close of your trial.  They need to be prepared by the court reporters.  We make a request that they do so at the time we file the notice of appeal.  We made that request. After that, the court reporters answer directly to the Fourth Circuit, not to us.  Their deadlines for preparing the transcripts are set by the court, not by us, and as I have explained to you and your family, this can take many months.  The court will not set a deadline to file the opening brief in your appeal until the transcripts are completed.

As I have also explained to your mother and your aunt, I do not have the page numbers for the transcripts.  I have, however, as a courtesy to you and your family, attempted to get this information from the court reporters prior to their completion of the transcripts, but I have not been successful.

The discovery agreement in your case does not permit you to have a copy of the discovery in your possession.  If you obtain new counsel, we will forward any necessary files to that person, when that person notifies the Fourth Circuit that they are acting as counsel, and we are released

The Law Office of

# Marta K. Kahn, LLC

---

7 East Franklin Street
Second Floor
Baltimore, MD 21202

tel: 410-299-6966
fax: 443-927-7216
mkkahn@yahoo.com

January 25, 2009

Patrick Albert Byers, Jr.
Inmate Number 43310-037
FCI Terre Haute
Federal Correctional Institution
PO Box 33
Terre Haute, IN  47808

Dear Mr. Byers:

Having received your motion to substitute counsel due to your desire to raise claims of ineffective assistance of counsel on direct appeal, we filed a Motion to Withdraw, which was granted by the Fourth Circuit.  A copy of the order appointing new counsel is enclosed.  I will ensure that your new lawyer receives the portion of the transcript that I have in my office.  Best of luck to you

Sincerely,

Marta K. Kahn

Enclosures

cc: William B. Purpura

## The Law Office of
## Marta K. Kahn, LLC

PO Box 65071
Baltimore, MD 21209

410-299-6966   mkkahn@yahoo.com
Fax: 443-927-7216

August 12, 2009

Patrick Albert Byers, Jr.
Inmate Number 43310-037
FCI Terre Haute
Federal Correctional Institution
PO Box 33
Terre Haute, IN  47808

Dear Patrick:

I understand that you recently sent Bill Purpura a letter in which you expressed disappointment that we had not been in better contact with you and that it was your intention to retain other counsel.

First, for the lack of communication, I apologize. I thought that you had understood that the appeal is a slow moving process. That has nothing to do with anything we are or are not doing. The pace is by and large out of our control.  In fact, all we have been ordered by the court to do at this point is file a docketing statement, which we have done. The docketing statement is nothing more than a very basic description of the issues we might raise (we can always change these later) and a directive to the court reporters to prepare the transcripts. Thus all we are doing right now is waiting for the transcripts to come, at which point, we will begin re-reviewing the issues. As I explained before, the issues for us to choose from on appeal basically include any motions, requests, or objections we made that the court denied.  I would expect that chief among these would be our effort to get the Coleman shooting excluded from evidence.  Obviously, our plan has always been to consult with you thoroughly once the drafting of the brief is actually underway.

Second, as we discussed before you left Baltimore, you are more than welcome to retain counsel.  I have already told you that in my opinion, it is not necessary for you and your family to undertake the financial burden this would require, but have also told you it is your absolute right to proceed that way.  This new lawyer, however, must officially enter an appearance in the Fourth Circuit.  Until then, we remain your counsel and will continue whatever preparations of your appeal are necessary.

You are, and have always been, welcome to contact me by mail or by phone as listed above.   Take good care, Patrick.

Sincerely,

Marta K. Kahn

cc: William B. Purpura, Esq.

Patrick Byers
Reg. No. 43310-037
FCI Terre Haute
P.O. Box 33
Terre Haute, IN  47808

August 3, 2009

Mr. William Purpura
Attorney at Law
8 East Mulberry Street
Baltimore, Maryland  21205

RE: United States v. Byers, Cr. No. RDB 08-056
      Appeal

Dear Mr. Purpura:

As you probably gather, I am in the process of preparing for the
appeal of my conviction to the Fourth Circuit Court of Appeals. I
have decided to obtain different counsel for this action.

While I have heard nothing from you since my trial wrapped up in
April of this year -- despite my repeated letters to you -- it has
reached me that you filed a notice of appeal. I certainly hope you
have done so. At any rate, I kindly request that you send me a
copy of the notice of appeal and any other motions you may have
filed in connection with that notice, as well as anything you have
received from the district or appellate courts in response to your
filing. I specifically request a copy of any request for transcripts.

Finally, I repeat my request that you send me a copy of the Haynes
and Lackl files. I trust that you will have no difficulty doing
so.

Thank you for your cooperation with this request.

Sincerely,


Patrick Byers

CC: Clerk, United States Court of Appeals for the Fourth Circuit

Patrick Byers
c/o FCI/CMU Terre Haute
PO Box 33 (43310-037)
Terre Haute, IN 47808

20 August 2009

The Law Office of.                                              N O T I C E
Marta K. Kahn, LLC
PO Box 65071
Baltimore, MD  21209

RE:  UNITED STATES  v.  PATRICK ALBERT BYERS, JR., ON APPEAL

Ms. Kahn:

I understand from your letter of 12 August 2009   that   Mr.
Purpura is in possession of at least one of my three  recent let-
ters. In particular you respond to what you say is my  expression
of disappointment in the lack of timely communications  regarding
direct appeal. I don't recall making any such expression   at all
and my cc show none. On the contrary, that wasn't my concern.  My,
request, as NOTICED here, was for your office to provide  without
any abridgment of any kind whatsoever: (1) HAYNES discovery;  (2)
LACKL discovery; (3) COLEMAN discovery; and (4) copies of all en-
tries your firm filed at anytime in the proceedings, all notes and
records on file in my case(s), in court and/or in your office, all
to be returned to me here in ordinary course of business : timely
and complete. I further claim for carbon copies of all documenta-
tion regardless of how insignificant as is sent or received in the
case(s) as long as your firm is on record or receives anything  re
this matter.

In interest of an even better understanding, in support of of  our
pursuit of authentic justice, I'm sharing herein a listing of di-
rectives to Mr. Purpura that he has ignored, stultified, or under-
mined in some obvious way(s). His continuous shortfalls  have un-
dermined my innocence [which you, Ms. Kahn implied is merely  my
product of a state of denial] and now largely if not entirely the
cause for my necessary efforts to secure justice from an even more
difficult situation unloaded upon me by that dump-truck -- lawyer
performance throughout the pre-trial and trial phases of the pro-
cess.

## LISTING OF SHORTFALLS

I.   I asked Mr. Purpura to secure photographs of the  JI     dorm
where I was housed in the Baltimore City Jail system. I asked him
to secure photo records of the telephone area;      kitchen area;
TV room; showers; and dorm. This would evince that: (1) my property
was not secure; (2) that I could not see my property to protect it
when in other areas; and (3) theft of HAYNES discovery was easily
fascilitated. He agreed, and then did nothing.

II.  I asked Mr. Purpura to secure the "text-message" records for
30 June thru 2 July 2007 for entry as alibi evidence in my defense
and he simply lied. He told me they were not available,  and   he

NOTICE-Purpura                                      page 1 of  4

could not get them. Yet, Frank Goodman's attorney simply secured his records ("... they don't keep them ... they aren't available."[Purpura])

III. I asked Mr. Purpura to secure the records of the cell phones seized in JI dorm during my custody there to show: (1) I was never caught with a cell phone while in JI dorm; (2) that record shows ~~that many people in JI dorm were making telephone contact with many~~ people. For me to use a cell phone would not [as US Attorney was able to characterize it] unique, and not evidence of any wrong doing. Though he said he was going to secure those records, I never saw them and he never presented them in my defense, though the U.S. Attorney called several witnesses to get their admission that they had spoken to me, as the prosecution presented that as evidence that I could have called Marcus Pearson.

IV. I asked Mr. Purpura to secure the video records of the news broadcast on local television after 2 July 2007 through up into the trial period. This information would show that Pearson's story was fabricated from what he had seen on the TV news. Mr. Purpura told me, "Don't worry I'll get that." He never got that crucial information which could well have impeached Marcus Pearson's entire perjured testimony.

V. I asked Mr. Purpura to secure the bull-pen videos from the period while we were in jury selection phase. It recorded Marcus Pearson admitting the truth. He could be seen saying, "Ya, I set 'em up, but I'm gonna go in there and tell the truth. Then when Pat goes home, I'm gonna make sure he gets killed." The videos show Goodman, and others. The others were witnesses and wanted to testify as to Pearson's admissions. Mr. Purpura said, "You can't get tapes; they don't record there." And refused to secure the tapes. The tapes that would have affirmatively impeached the entire Pearson fabrication, discharged the entire case as presented by the U.S. Attorney. I would have been justly acquitted.

VI. T-NETIX phone systems provider at the Baltimore City Jail, had a control expert called by the U.S. Attorney to testify that I only used the telephone from the jail March 2006 thru April 2006 to imply that I was dodging the telephone security system. I told Mr. Purpura to secure my grandmother's telephone records as they would verify that In Fact I had been calling her a great deal as her bill would certify. He ignored my request on this crucial evidence, leaving the jury convinced that I was circumventing the telephone security.

VII. I affirmed to Mr. Purpura the names of a family member and two close friends who had suffered an attempt on their lives by Marcus Person who shot two and had his close friend shoot the other. He appeared to take note of this, but never followued up nor did he call them in the effort to impeach Marcus Pearson's account fabricating what never happened.

VIII. I affirmed to Mr. Purpura that Marcus Pearson had directed the "BLOODS" to stab Frank Goodman at the city jail in 2006. A corrections officer, and eyewitness to events, with credibility was willing to testify as to those facts. Mr. Purpura ignored this valuable exculpatory evidence which would have provided additional evidence to impeach Marcus Pearson's fabricated story.

NOTICE-Purpura                                          page 2 of   4

IX.  I told Mr. Purpura that Jamar Saunders and Tracy Love  were
willing to testify that the U.S. Attorney had solicited their
perjury testimony to be used against me. Jamar was  offered   the
reversal of a 15 year sentence, and Tracy was offered an    un-
disclosed benefit for such testimony, that the U.S. Attorney knew
was perjury. Further, I informed Mr. Purpura that Jamar was  also
willing to testify to his ownership of the cell-phone in MAS  was
his and not mine. Mr. Purpura refused to pursue this   particular
exculpatory evidence, further prejudicing my defense and  leaving
the jury without the essential evidence that would secure my just
acquittal.

I - IX are all prejudices that compromised my defense in   LACKL.
The list continues with the improprieties in the HAYNES case.

X.   In HAYNES, I asked Mr. Purpura to secure my telephone records
for 4 March 2006, the day of the HAYNES murder.   Darrell Briggs
was with HAYNES when he was attacked and shot. He ran away in fear
from the scene and called me to tell me what had happened.  I re-
ceived the call while at the car-wash with my girl friend.  This
and her witness clearly would prove that I was not HAYNES killer.
Mr. Purpura did not follow-up on this Firm alibi evidence   which
would affirm that I am innocent of the HAYNES murder.

XI.  I asked Mr. Purpura to secure a back ground investigation re-
port on detective Jenkins. What basis of credible standing he had
to question or testify as to my character. He wrote it down, but
never returned with a report.

XII. I entrusted Mr. Purpura with information as to HAYNES   mur-
derer, QUINTIN HOGAN(deceased)  and told Mr. Purpura that the DNA
tests of the gun would verity that HOGAN had handled the gun that
had been used to murder HAYNES. Later at a motions hearing   the
U.S. Attorney brought the DNA up. It was implied that he gave Mr.
Purpura the DNA information that I had given him.  (Strongly in-
dicated to me Mr. Purpura went to U.S. Attorney with my tip.)

X - XII are all prejudices to my defense in HAYNES, and contribute
further prejudices in LACKL.

<u>CONCLUDING</u>

In the COLEMAN matter, if anyone had simply looked at the   dis-
covery they would have seen he was shot in front of the house, out
side, as the shell casings were found in the front of the house.,
not in the kitchen where he alleged as he perjured testimony   he
had been shot by me. Under more serious pressure of the evidence
COLEMAN would have admitted he had been told what to lie about. I
wrote down details sure to impeach the COLEMAN perjured testimony,
but Mr. Purpura refused to acknoledge or use my inside, detailed,
exculpatory information.

Though Mr. Purpura agreed we needed expert witnesses:  (1) eyewit
nesses; (2) telephone; (3) DNA; (4) video, he never  arranged for
nor called any of them.

The sound array of witnesses that we agreed upon were impeachment
authorities in COLEMAN, HAYNES and LACKL, Mr. Purpura  refused to

NOTICE-Purpura                                    page 3 of  4

call all but two of the over ten witnesses. Without revealing to me, he failed to subpeona them, and then just as we were to present our defense he told me he was not going to call most of them with exception of Darrell Briggs (who he failed to ask the crucial questions) and my cousin, Vonda Cole who had been at the courthouse with me when the COLEMAN assault occurred.

~~I still remain confused by the incident before trial,~~      ~~where I~~
met with [you] Ms. Kahn and Mr. Belrezo and I asked why they had told the prosecutor about details of my defense.  In your answer I would like your clear explanation as to how [as explained]  you would, by doing so get information out of the prosecution by giving up mine. I still cannot understand that.

The information requested above must include my original  indictment and superseding indictment(s).

I present this listed NOTICE postpaid and affixed, U.S. Mail   to above addressee. Failure to probate the content by certified return in ordinary course of business (30 days or less) affirms this NOTICE is an accurate representation precept upon precept,   line upon line and is, as such bargain of the parties hereto and  FIRM in all venues.

Done, NOTICED and PRESENTED this _20_ Day of August, 2009.

Aggrieved,
Patrick Albert Byers,Jr.

_/s/ Patrick Albert Byers Jr._
"good as AVAL"

c.c. File

## SPECIAL NOTE

Let us not forget that the record will preserve some of the above i.e., Frank Goodman's counsel disclosed that every e-mail he  had received from the U.S. Attorney or sent to them was cc to  Frank. Mr. Purpura NEVER made any such disclosures.

Aggrieved, I also recall for your clear understanding, When I told you, while Mr. Purpura and Mr. Belrezo were back picking the jury that I was not nervous [because due to my innocence I was  confident that I would be acquitted], you said, "That's because you are in complete denial, you, and your grandmother." You were   either convinced that I was guilty, or you knew something about the  defective defense that I was going to trial with, perhaps dirty politics involved and the likelihood of my not receiving a fair trial or some combination of the three.

NOTICE-Purpura                                        page 4 of   4

Patrick Byers
c/o FCI-CMU -- THA
POB 33(43310037)
Terre Haute, IN 47808

13 May 2010

Marc Hall, Esq.
Attorney at Law
200A Monroe Street, Suite 310
Rockville, MD  20850


RE: EXCULPATORY EVIDENCE, NOTICE OF

Dear Mr. Hall,

    This notice in support of a successful direct appeal affirms substantive defects in the AUSAs errant scenario, and thus exposes substantive prejudices in the entire trial process, that had they been known to the jury, the miscarriage of justice would never have been possible, and innocents, I and Mr. Goodman would have been acquitted.

Thus, I am requesting the following records be retrieved and that with duplicates in hand, I can assist in utilizing the crucial evidence in them to affirm sound claims on appeal. Records we must have:

    1)  My arrest record, 1st arrest as an adult (2003)  complete with names of the officers

    2)  Renardo Robinson's 2005 and 2006 arrest records complete with the names of the officers.

    3)  My court date records of DEC 2005, JAN/FEB 2006,    North Avenue Courthouse, complete with 2 pm Docket Time.

    4)  Anthony Conway, JR, his only arrest record complete with officers' names.

    5)  Terrance Whitworth arrest records of DEC 2005 and JAN/FEB 2006 complete with officers' names.

These records will repudiate the perjurous record and affirm the complete lack of fairness and credibility as to the trial of present record. As time is of the essence, I ask that these critical records be secured, duplicated, and I be provided copies so that we can effectively  apply the evidence to our appeal.

Please reply with a progress report and time frame we can expect to  be using these crucial records within two weeks of your receipt of  this notice.

                                Respectfully directed,


                                Patrick Byers

c.c. File
     Grandmother

Patrick Byers
c/o #43310-037
PO Box 33
—————————————Terre Haute, IN 47808—————————————

1 March 2010

MARC G. HALL, Attorney at Law          Re: <u>U.S. v Patrick Byers, Jr.</u>
HALL & CHO, PC                              <u>1:08-cr-56-RDB-1</u>
200A Monroe Street, Suite 310          On Appeal, No. 09-4439
Rockville, MD 20850

Mr. Hall:

First and most important, I received an e-mail form  my aunt
today, 28 February and she reported to me that you were supposed to
call me here. Her e-mail originated on 17 February.  Why would you
ask the Case Manager if I could have my transcripts?   He is not a
party to my case, and OF COURSE I can have a copy!

Why are you wasting time and delaying delivery of a complete copy of
my transcripts to me, when In Fact my opening brief is due in  May
leaving me a short time to verify what had taken place in trial?  I
do not have absolute recall of everything that took place in trial,
and certainly have no insight in the portions at side-bar. My first
hand insight is essential to the ends of justice, as the transcript
record does not contain critial details. I must be able to  provide
that insight to assure that my appeal is successful.

If there is some kind of economic hardship involved in you  getting
me a complete copy of the transcripts, I ask what the costs are.  I
am directing you to, without any further delay to inform my aunt so
that we can take care of that expense and get the transcripts  de-
livered here to me A.S.A.P.!

NEXT: Send me the papers that I sent you. And whenever you send  me
correspondence be certain that the outside of the envelope is mark-
ed "LEGAL/ATTORNEY MAIL - OPEN IN PRESENCE OF PRISONER ONLY!"  (all
of your mail to me).

If you do not deliver the transcripts to me without further delay or
excuse, you are directed to put in an immediate withdrawel of coun-
sel notice.

I do not mean any disrespect by my direct communications but my life
is on-the-line and I am paying attention to details. I am not about
to tolerate a half-hearted effort while I sit in the dark an end up
with a Firm conviction and life sentence in a matter where I am  in
fact absolutely INNOCENT. I expect results and I pay attention  to
details.

Its time for absoluted effective process and results favorable to me.

                                        Sincerely

c.c.                                    Patrick Byers



# HALL & CHO P.C.
## ATTORNEYS AT LAW

**Marc G. Hall**
mghlaw@mac.com

**Jeannie E. Cho**
jcho@hallcho.com

July 14, 2010

Patrick Byers, Jr.

Register # 43310-037

FCI TERRE HAUTE

FEDERAL CORRECTIONAL INSTITUTION

P.O. BOX 33

TERRE HAUTE, IN 47808

### *LEGAL MAIL- CONFIDENTIAL*

Dear Mr. Byers:

    Enclosed please find the initial brief filed in your appeal. The government will be filing a response in approximately 30 days after which we will be filing a reply brief.

    After thoroughly researching the jurisdictional issue I concluded that the law simply does not support the claim that the Federal Court lacked jurisdiction. The use of a federally regulated device such as the cell phones clearly gives the government jurisdiction so after much consideration I did not include that issue.

    I do think you have a very good issue with regard to the Rule 404(b) evidence and that is the emphasis of the brief.

HALL & CHO, P.C.

Marc G. Hall

MGH: abm
enclosure

200 A Monroe Street, Suite 310 Rockville, Maryland 20850 o.301.309.6678 f.301 340.2843

The Law Office of

# Marta K. Kahn, LLC

7 East Franklin Street
Second Floor
Baltimore, MD 21202

tel: 410-299-6966
fax: 443-927-7216
mkkahn@yahoo.com

November 24, 2009

Patrick Albert Byers, Jr.
Inmate Number 43310-037
FCI Terre Haute
Federal Correctional Institution
PO Box 33
Terre Haute, IN  47808

Dear Mr. Byers:

Enclosed please find copies of your Indictments per your request.  The original
Indictment was returned on February 5, 2008.  The Superseding Indictment was returned on
August 5, 2008.

Regarding your transcripts, I have learned that about half of them have been prepared, and
I will be picking them up shortly.  The second court reporter, who is completing the other half,
has just received another extension until December 4, 2009.  As I said, these extensions are
routinely granted and do not affect the timing of your appeal, as no briefing schedule will be set
until the transcripts are complete.

Sincerely,

Marta K. Kahn

Enclosures

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

UNITED STATES OF AMERICA                :

v.                                      :          **CRIMINAL NO. RDB 08-56**

**PATRICK BYERS**                       :

...oOo...

## GOVERNMENT'S MOTION TO DISMISS DEFENDANT'S MOTION FOR DISCOVERY (ECF 474)

Now comes the United States of America by its counsel, Rod J. Rosenstein, United States Attorney for the District of Maryland and John F. Purcell, Jr., Assistant United States Attorney for said District, and requests that the court dismiss Defendant's *pro se* Motion for Discovery (ECF 474), as follows:

### I.     Procedural Background

The Defendant, Patrick Byers, is serving *six* life sentences imposed on May 4, 2009, following his conviction on charges based on the 2007 murder-for-hire of a federal witness, Carl Lackl. ECF 340 (Judgment).   The Court of Appeals affirmed Byers's convictions and life sentences on May 6, 2011. ECF 405 (Judgment of the USCA).   Byers's various post-conviction challenges to his convictions and life sentences have also failed. They were denied by this court on September 16, 2015. ECF 465. 1

---

1 Byers is also one of over 400 defendants on behalf of whom the Federal Public Defender may present ostensible claims under *Johnson v. United States*, 135 S.Ct. 255 (2015). ECF 470.   Of course, Byers's life sentences for Count One-Six do not implicate *Johnson.*   As to Counts One and Two, mandatory life sentences were imposed for violations of 18 U.S.C. § 1958 (Counts One and Two, conspiracy and substantive murder–for–hire).   As to Counts Three and Four, mandatory life sentences were imposed for violations of 18 U.S.C. § 1512 (conspiracy and witness murder). Similarly, the non-mandatory life sentences imposed for Counts Five and Six were for violations

1

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on the 22nd day of March 2016, a copy of the foregoing

Government's Motion to Dismiss Movant's Motion for Discovery was electronically filed with

the Clerk of the U.S. District Court for the District of Maryland and that a copy was also mailed

to Prisoner Patrick Byers, Prisoner number 43310-037, USP Marion, P.O. BOX 1000, MARION,

IL 62959.

/ /

John F. Purcell, Jr.
Assistant United States Attorney

Exhibit #2

These are 2 articles from ProQuest that i just received from the Internet. These articles clearly shows that the government never had jurisdiction and that Mr. Carl Lackl was not a goverment witness, But rather a States witness.

Also, A copy of my state docket sheet that i recently received on May 20, 2021 from the State of Maryland in the case of the murder of Larry Haynes. These copies are of pages 1, 8, 9, 10 and 11. There was no asistence from any federal government officer. The officers listed are Baltimore City Police officers. Also, You will notice that Det. Wayne Earl Jenkins name is not present, because he was never a States witness. And the government knew this information but still chose to solict the false information from Jenkins to say he was a States witness. The State charges were dismissed in April 2008.

Patrick Byers

Back to previous page



document 1 of 1

## KILLING OF WITNESS DELAYS MURDER TRIAL: [FINAL Edition]

Bykowicz, J. (2007, Jul 11). KILLING OF WITNESS DELAYS MURDER TRIAL. The Sun Retrieved from
http://search.proquest.com/docview/406165740?accountid=10750

### Abstract (summary)

On [Patrick Byers]' postponement form, city prosecutors checked "state witness unavailable" and wrote in
"murdered 7/2/07." The new trial date is Sept. 13. No arrests have been made in Lackl's killing.

### Full Text

The first-degree murder trial of Patrick Byers was postponed yesterday, as police investigate a possible link
between that city case and the shooting death of its main witness last week in Rosedale.

Byers, 22, is accused in the March 2006 shooting death of Larry Haynes, 30, in East Baltimore. He has
been held without bail. Carl Stanley Lackl, 38, witnessed the Haynes shooting and was prepared to testify,
city prosecutors said. He was killed July 2 in a drive-by shooting in front of his home in the 8000 block of
Philadelphia Road, Baltimore County police said.

On Byers' postponement form, city prosecutors checked "state witness unavailable" and wrote in
"murdered 7/2/07." The new trial date is Sept. 13. No arrests have been made in Lackl's killing.

(Copyright 2007 @ The Baltimore Sun Company)

### Indexing (details)

| | |
|---|---|
| People | Byers, Patrick, Haynes, Larry |
| Title | KILLING OF WITNESS DELAYS MURDER TRIAL: [FINAL Edition] |
| Author | Bykowicz, Julie |
| Publication title | The Sun |
| Pages | 3B |
| Number of pages | 0 |
| Publication year | 2007 |
| Publication date | Jul 11, 2007 |
| Year | 2007 |
| column | CRIME WATCH |
| Section | Local |
| Publisher | Tribune Publishing Company LLC |

# Larry Haynes

Mar 4 2006 2:55PM
Ruling: Homicide
Where Murdered: 2400 block of Jefferson
Street
How Murdered: Shot

Age: 30
Sex: M
Race: African American
Area: McElderry Park
District: Southeastern
Decision: Charges Dropped
Status: Closed



Map data ©2014 Google
Open a larger map.

Select a victim by year.

2014
2013
2012
2011
2010
2009
2008
2007
2006
1900

Murder Totals
2014: 75
2013: 235
2012: 217
2011: 197
2010: 223
2009: 240
2008: 234
2007: 282
2006: 276
1900: 4

2:55 p.m. Larry Haynes, a 30-year-old African-American man, was shot repeatedly in the head at the corner of Jefferson Street and Montford Avenue in McElderry Park. Haynes died there. His wife was there when police arrived. On March 20, Patrick Byers, a 20-year-old African-American man, was arrested and charged with Haynes' murder.

Update: The state of Maryland dismissed the murder charges against Patrick Byers, a 23-year-old African-American man, on April 15, 2008. Byers was charged with the March 4, 2006, murder of Larry Haynes, a 30-year-old African-American man. Haynes was shot repeatedly in the head in East Baltimore. According to a statement by Joseph Sviatko, a spokesman for the Baltimore City State's Attorney's Office, the charges were dropped because "[t]he main witness in this case was murdered and the state forfeiture-by-wrongdoing law sets a high threshold for introducing testimony of dead witnesses." Byers is being indicted on federal charges including murder and witness intimidation. According to Sviatko's statement, the "decision was based on the Baltimore City State's Attorney's Office effort to seek the best possible jurisdiction to ensure a successful prosecution." The witness in the case, Carl Lackl, a 38-year-old Caucasian man, was shot to death outside his home in Baltimore County on July 2, 2007. The U.S. Attorney's Office has indicted four people, including Byers, for Lackl's murder. Byers allegedly offered to pay $2,500 for Lackl's murder. Lackl was killed by people pretending to be interested in buying a car he was selling.

Send an email if you have more information about this case.

"The hurt my family is left with, it's beyond anything anybody could understand," his mother, Marge Shipley, told the jury. She was in court every day of the weeks-long trial.

Byers' mother showed up only a few times before she was arrested for malicious destruction of property. She was included in the defense category of mitigating factors - those reasons Byers grew from the sweet child shown in a posed photo to a drug dealer in his teen years and a murderer by age 20.

His mother, Karen Cole, has been a drug addict for decades, and Byers' father was a violent criminal who spent a dozen years in prison before teaming up with his 15-year-old son to sell heroin. He had a supportive grandmother, defense lawyers said, but she was overwhelmed caring for 20 grandchildren and still struggling with the reality that all seven of her children had at one time been addicted to drugs; five of them are now dead.

Byers learned about violence and crime at a young age, when it counts most, his attorneys said, bringing in accomplished experts to prove it.

Personality, ethics and world view are shaped by the age of 10, said forensic psychiatrist Dr. David Williamson. The neglect of Byers' East Baltimore neighborhood was "stunning," said Hope Hill, an associate professor of psychology at Howard University. Byers' IQ of 77, on the border of mental retardation, prevents him from thinking rationally like most people, said neuropsychologist Dr. Cynthia Munro.

Defense attorney William Purpura asked the jury to consider compassion in its verdict, to recognize that Byers had the capacity for repentance and that he would never again be a free man, even if he weren't sentenced to death. A life sentence would put him in an 89-square-foot cell with another inmate for the rest of his days.

He would grow vulnerable to the younger prison population with age, and he would die there, unless the jury decides Byers should die, Purpura said.

"Mr. Byers up to this point has been the executioner," countered Assistant U.S. Attorney John F. Purcell.

"I know you're going to be strong," he said to the jury. "All you have to do is think of Carl."

Credit: tricia.bishop@baltsun.com

(Copyright 2009 @ The Baltimore Sun Company)

## Indexing (details)

| | |
|---|---|
| Subject | Capital punishment; Trials; Mental retardation |
| Title | JURY DELIBERATIONS BEGIN: DEATH SENTENCE OR LIFE IN JAIL CONTEMPLATED IN WITNESS MURDER |
| Author | Bishop, Tricia |
| Publication title | The Baltimore Sun |
| First page | A.3 |
| Publication year | 2009 |

```
  05/04/21  CRIMINAL  COURT  OF  BALTIMORE                    CASE  INQUIRY  12:18
   CASE  106095008                    DCM  TRACK  A  DATE  070907    FELONY  DRUG  INIT
 CASE  106095008  STATUS  C  DATE  041508  PREV  ST  A  040506  CODEF  NO  CHANGE  041414
  DEF  BYERS,  PATRICK              ID  961580   SID  002487723  R:  B  S:  M  DOB  042285
    ADDRESS  505  N  LAKEWOOD  AVE                      BALTIMORE   MD  21205
    DOA  000000  CMPL  62C02078  PHYS  LOC  JAL  022606  CASE  LOC  REL  041508
    DOF  040506  TRACK  NO  06-1001-10404-3  DIST  CASE  4B01756381  WAR  00  CJIS  R  RI  1
  001  000  C  USER  MUR01  CODE  2  0900        MURDER-FIRST  DEGREE       DISP  NP     041508
       ARREST/CITATION  NO  0
```

| PLEA | DATE | VERDICT | DATE | | |
|------|------|---------|------|---|---|
| SENTENCE TYPE | DATE | TIME | BEG | SUSP | |
| PROBATION TIME | | TYPE | COST | FINE | |

```
  002  000  C  USER  HGV    CODE  1  5299        HANDGUN:  USE  IN  COMMIT  DISP  NP     041508
       ARREST/CITATION  NO  0
```

| PLEA | DATE | VERDICT | DATE | | |
|------|------|---------|------|---|---|
| SENTENCE TYPE | DATE | TIME | BEG | SUSP | |
| PROBATION TIME | | TYPE | COST | FINE | |

```
  003  000  C  USER  HGV    CODE  1  5212        HANDGUN  ON  PERSON:  CAR  DISP  NP     041508
       ARREST/CITATION  NO  0
```

| PLEA | DATE | VERDICT | DATE | | |
|------|------|---------|------|---|---|
| SENTENCE TYPE | DATE | TIME | BEG | SUSP | |
| PROBATION TIME | | TYPE | COST | FINE | |

```
 NEXT PAGE                              P/N                        PAGE 001
```

```
05/04/21  CRIMINAL  COURT  OF  BALTIMORE              CASE INQUIRY  12:18
  CASE 106095008 ST C BYERS, PATRICK          961580  COD N DCM A 070907
EVENT DATE    OPER PART TIME ROOM REAS / EVENT COMMENT
MOTF 032508     S8R DEMAND FOR CHEMIST
FILE 032508     S8R FILED ADF - MEAD, MARGARET             , ESQ 545692
HCAL 041508 1 S8T P46;0930;329E;JT  ;NP;JUDG;   ;PIERSON, W. MIC;8C7
COMM 041508     S8T RELEASE FILED
CCAS 041508     S8T CASE CLOSED - NOLLE PROSEQUI            - Q327
COMM 041014     CLN ORDER FOR BODY ATTACHMENT RECALL AND QUASHED
COMM 041014     CLN PER JUDGE WELCH.
CON FULL NAME/PHONE NUMBER      IDENT ADD/FILE STREET/CITY STATE ZIPCODE V/W
ADF BATES, IVAN                  43061  092107 201 N CHARLES ST SUITE 1900
    410-814-4600                        091107 BALTIMORE  MD 21201
ADF MEAD, MARGARET              545692  032608 1 N. CHARLES STREET STE 2470
    410-727-6400                        032508 BALTIMORE  MD 21201
ADS ROBINSON, STEPHANIE         699695  082806 1 NORTH CHARLES ST STE 1101
    443-438-4032                               BALTIMORE  MD 21201
ADS WALKER, ROLAND              862038  021307 306 CT SQUARE BLDG
                                               BALTIMORE  MD 21202
ASA BANKS, CYNTHIA               37774  050306 120 E BALTIMORE ST #1054
    443-984-6205                        050206 BALTIMORE  MD 21202
ASA HOLBACK, SHARON RUTH        379574  041006 120 E BALTIMORE ST  #1024
    443-984-6035                        040506 BALTIMORE  MD 21202
NEXT PAGE                               P/N                  PAGE 008
```

```
05/04/21  CRIMINAL  COURT  OF  BALTIMORE                    CASE INQUIRY  12:18
 CASE 106095008 ST C BYERS, PATRICK        961580  COD N DCM A 070907
 CON FULL NAME/PHONE NUMBER      IDENT ADD/FILE STREET/CITY STATE ZIPCODE V/W
WID FERGUSON, MATTHEW                     013007 512 N LUZERNE AVE
                                                 BALTIMORE  MD 21205
WID FERGUSON, WAYNE                       013007 2032 E PRESTON ST
                                                 BALTIMORE  MD 21213
WID HUNT, WELTON                          013007 1743 N BOND STREET
                                                 BALTIMORE  MD 21213
WID JAMES, SHANICE                        013007 10 JENNY LANE
                                                 BALTIMORE  MD 21208
WID JEFFERSON, JOSEPH DET HOMICIDE        013007 601 E FAYETTE ST
                                                 BALTIMORE  MD 21202
WID PARHAM, JOSEPH                        013007 113 N MONTFORD AVE
                                                 BALTIMORE  MD 21224
WID ROOKSTOOL, CHERYL                     013007 1095 ARLINGTON AVE
                                                 BALTIMORE  MD 21217
WID ROSS, GLENN                           013007 509 N MILTON AVE
                                                 BALTIMORE  MD 21205
WID SANDERS, DONALD                       013007 433 N PATTERSON PK AVE
                                                 BALTIMORE  MD 21213
WID YERBY, GREGORY                        013007 1005 HOMEWOOD AVE
                                                 BALTIMORE  MD 21202
NEXT PAGE                                  P/N                  PAGE 009
```

```
05/04/21  CRIMINAL  COURT  OF  BALTIMORE                    CASE INQUIRY  12:18
  CASE 106095008 ST C BYERS, PATRICK            961580   COD N DCM A 070907
  CON FULL NAME/PHONE NUMBER        IDENT ADD/FILE STREET/CITY STATE ZIPCODE V/W
  WIS HAYNES, TOWANDA                       050906 715 NORTH CURLEY ST
                                                   BALTIMORE  MD 21205
  WIS HOGAN, SUSAN DR OCME                  041806 111 N PENN ST
                                                   BALTIMORE  MD 21202
  WIS HUNT, WELTON                          080206 1743 BONO ST
                                                   BALTIMORE  MD 21223
  WIS JAMES, SHANISE                        122806 10 TANNY ST
                                                   BALTIMORE  MD 21225
  WIS PAIHAM, JOSEPH                        080206 113 N. MONTYARD AVE
                                                   BALTIMORE  MD 21205
  WIS REEDY, ED DR OCME                     041806 111 N PENN ST
                                                   BALTIMORE  MD 21202
  WIS ROOKSTOOL, CHERYL                     080206 1095 ARLINGTON AVE
                                                   BALTIMORE  MD 21223
  WIS YERBY, GREGORY                        122806 1005 HOMEWOOD AVE
                                                   BALTIMORE  MD 21202
  PO  SINGLETON, ANTHONY R          D903    020607 09  - ASSIGNMENT UNKNOWN
  PO  MARTIN, THOMAS J              E437    041006 22  - ASSIGNMENT UNKNOWN

  NEXT PAGE                                 P/N                PAGE 010
```

None of these Baltimore City Police officers are federal officers. Only Det. Thomas J. Martin interview witnesses Joseph Parham and Carl Lackl.

```
        05/04/21  CRIMINAL COURT OF BALTIMORE                    CASE INQUIRY  12:18
        CASE 106095008 ST C BYERS, PATRICK            961580  COD N DCM A 070907
     CON FULL NAME/PHONE NUMBER        IDENT ADD/FILE STREET/CITY STATE ZIPCODE V/W
   PO  VENEY, MARK E                   E557  041806 22  - ASSIGNMENT UNKNOWN

   PO  BRADSHAW, DONALD V              E948  041806 36  - ASSIGNMENT UNKNOWN

   PO  CORRIVEAU, TODD F               G193  041806 22  - ASSIGNMENT UNKNOWN

   PO  HOHMAN, STEVEN L                G535  041806 23  - ASSIGNMENT UNKNOWN

   PO  DOBRY, JOSEPH L                 H411  041806 37  - ASSIGNMENT UNKNOWN

   POS HAEGNER, TIM OFF                      041806 SE

   POS PETERS, BILLTECH                      041806 LD

   POS RIVERA, LISSETTE TECH                 041806 LD



   END OF DATA                    .              P/1                  PAGE 011
```

Exhibit 3

These are 6 pages of the 2006 Baltimore City Homicide List. There were 216 Shooting deaths, Only 56 of those Shooting deaths charged a Suspect. None of those 216 were charged federally.

Murder is not a federal offense, unless there is some Kind of federal ~~____~~ nexus, Like, Hobbs Act, Committed multiple related crimes across multiple States, Underlying crime involved "Large Scale gang activity and drug trafficking, or federal Task force was investigating defendant's large gang and informants already spoken with federal officers. The federal nexus in my case just do not exist. Even viewing the evidence in light most favorable to the prosecution, There would be no evidence that exist. In the underlying State of Maryland v. Patrick Byers, I was arrested ONLY for felony murder, I was not arrested for DRUGS, No Gang Activity and no witness gave Such a Statement. My case is just like U.S. V. Snyder (2017) and Fowler V. U.S. (2011).

Patrick Byers

  0    More    Next Blog»                                              Create Blog  Sign In

# Miscellaneous Posts

## 2006 Baltimore City Homicides List and Map

The official count of 2006 Baltimore City homicide victims provided by the Baltimore City Police to the FBI was 276 homicides. The list below has 274 victims and is based on data provided by the Baltimore City Paper. The City Paper failed to list one homicide on the week of September 23, also the City Paper admits its list was off by one homicide which was never reconciled with the official police department list.

| No. | Date Killed | Name | Age | Address Block Found | Notes |
|---|---|---|---|---|---|
| 1. | 01/01/06 | Stephanie Miles | 21 | 2400 Woodbrook Avenue | Shot by friend's boyfriend |
| 2 | 01/01/06 | Michelle Denton | 49 | 300 West Fayette Street | Throat cut by exboyfriend, Earl Holeman charged |
| 3 | 01/01/06 | Dahuan Jones | 20 | 3400 Spelman Road | Victim found in Cherry Hill woods with gunshot wounds |
| 4 | 01/01/06 | Ronny Martin | 16 | 2600 Marbourne Avenue | Shooting victim found in vehicle, Anthony Dickson and Michael McFadden charged |
| 5 | 01/03/06 | Gregory Ball | 25 | 1300 Booth Street | Shooting victim |
| 6 | 01/03/06 | Vatell Murray | 15 | 2600 Greenmount Avenue | Shooting victim found in railroad tunnel |
| 7 | 01/09/06 | Ronald Kinzer | 33 | Edmondson and Franklintown Road | Victim shot at carwash |
| 8 | 01/09/06 | Cornell Lemon | 23 | 100 South Monastary Avenue | Victim shot near home, may have been a robbery, Lawrence Miller charged |
| 9 | 01/13/06 | Johnny Evans | 43 | 200 North Bruce Street | Victim hit with drywall hammer by roommate, John Wilson charged |
| 10 | 01/13/06 | Jimmy Sabb | 17 | 3100 Woodland Avenue | Shot during robbery |
| 11 | 01/13/06 | Gary Rideout | 41 | 2200 Aiken Street | Double homicide, shooting victim |
| 12 | 01/13/06 | Raymond Williamson | 35 | 2200 Aiken Street | Double homicide, shooting victim |
| 13 | 01/13/06 | Henry Ireland | 56 | East Preston and North Bradford Streets | Victim of Blunt Force Trauma |
| 14 | 01/14/06 | Robert Richardson | 26 | 1800 West Lombard Street | Victim assaulted with baseball bat |
| 15 | 01/15/06 | Edward Brown | 24 | Riggs and Calhoun Streets | Shooting victim |
| 16 | 01/15/06 | Jose Mendoza | 40 | 400 South Newkirk Street | Victim shot at La Bahia restaurant |
| 17 | 01/18/06 | Kristopher Reinhard | 16 | 2200 Washington Boulevard | Triple Stabbing outside Italiano's Restaurant, Pablo Bowers and Ronald Herr charged |
| 18 | 01/19/06 | Mervyn Beckles | 23 | 2800 West Mulberry Street | Shooting victim |
| 19 | 01/20/06 | Gregory Hopewell | 21 | 2600 Shirley Avenue | Shooting victim found behind home |
| 20 | 01/20/06 | Fernandez Woodson | 23 | 800 North Glover Street | Triple Shooting double homicide, Jerome Garrison charged |
| 21 | 01/20/06 | Karlee Blackwell | 14 | 800 North Glover Street | Triple Shooting double homicide Jerome Garrison charged |
| 22 | 01/21/06 | Kayla Baker | 34 | 1300 Sherwood Avenue | Quintuple shooting angry man, James Ray went on rampage then committed suicide |
| 23 | 01/21/06 | Lemuel Davis | 58 | 4100 Alameda | Lemuel Davis allegedly threatened brother then killed by brother's boss, Stephen Moodly |
| 24 | 01/22/06 | Clyde Tatum | 18 | 1200 Slater Road | Shooting victim |
| 25 | 01/22/06 | Antwoine Armstead | 21 | 3300 West Belvedere Road | Shooting victim |
| 26 | 01/23/06 | Temitayo Olowolayemo | 18 | 5500 Winner Avenue | Shot during robbery |
| 27 | 01/23/06 | Augustus Venable | 37 | 2100 Lafayette Avenue | Shooting victim, Devone and Lisa Marshall charged |
| 28 | 01/24/06 | James Wright | 31 | 500 West 30th Street | Shooting victim, Levar Shedrick charged, Kyle Stevens plead guilty |
| 29 | a. 07/18/30 d. 11/15/05 | Richard Witherspoon | 57 | 1600 Barclay Street | Beaten by three men with a bat |
| 30 | 02/02/06 | Rickey Medley | 19 | Cold Spring Lane and York Road | Double homicide, Victim shot after altercation at gas station, Abdul Karim Alvez-El charged |
| 31 | 02/02/06 | Martell Brown | 16 | Cold Spring Lane and York Road | Double homicide, Victim shot after altercation at gas station, Abdul Karim Alvez-El charged |
| 32 | 02/03/06 | Kurt Bowie | 23 | 3800 Potee Street | Shooting victim found in vehicle |
| 33 | 02/04/06 s 01/27/06 d | Mitchel Briggs Jr | 33 | 1600 Abbotston Street | Shooting victim found inside Yom's Food Market |

ENGAGE ME

Hire or Arrang
Speaking Eng
with Cham Gr

SEARCH THIS I

POPULAR POS

2014 Baltim
Homicides/M
and Map

2014 Baltim
Homicides -

2013 Baltim
Homicides/M
and Map

The Bodies
Park - Baltin

2013 Detroit

2012 Baltim
Homicide/M
List and Map

2012 Detroit
Homicides/M

ABOUT ME

feel free to writ
a question or re
View my compl

FOLLOW BY EI

BLOG ARCHIVE

► 2014 (8)
▼ 2013 (7)
  ► Septemb
  ▼ August (2
    Dangerou
    City Cr
    2006 Balt
    Homic
    Map
  ► May (2)
► 2012 (26)
► 2011 (35)
► 2010 (14)
► 2009 (16)
► 2008 (35)
► 2007 (65)
► 2006 (41)

| | | | | | |
|---|---|---|---|---|---|
| 34 | 02/08/2006 | Lamont Smith | 21 | 1 Goldsmith Alley | Double shooting ,Donte Miller and Michael Park charged |
| 35 | 02/10/06 | Linwood Timmons | 48 | 600 North Frankintown Road | Shooting victim found in home | ► 2005 (26) |
| 36 | 02/13/06 | Dana Hawks | 29 | 2500 West Baltimore Street | Shooting victim | ► 2004 (1) |
| 37 | 02/13/06 | Donald Henderson | 23 | 3000 Thorndale Avenue | Stabbed after altercation, Thomas Morton Jr. charged | STATCOUNTER |
| 38 | 02/16/06 | Fredericka Mosley | 46 | 200 North Bond Street | Fatally stabbed during a fight,Irvin Mosley sentence to life in prison |
| 39 | 02/17/06 | Rwane Walker | 16 | 1600 Druid Hill Avenue | Shooting victim Michael Lynn charged |
| 40 | 02/18/06 | Dorrine Smith | 67 | 2000 Braddish Avenue | Victim of Blunt Force Trauma |
| 41 | a 09/02/01 d11/22/05 | George Davis Jr. | 28 | 1800 East Eager Street | Victim of Blunt Force Trauma |
| 42 | s 03/1998 d 09/30/2005 | Antoine Ellis | 42 | 2000 Edmondson Avenue | Victim died due to complications from previous gunshot wounds |
| 43 | 02/28/06 | Donte Bellamy | 22 | 1600 East 25th Street | Double homicide, shooting victim, Chris Ward charged |
| 44 | 02/28/06 | Duraye Cole | 36 | 1600 East 25th Street | Double homicide, shooting victim Chris Ward charged |
| 45 | 03/01/06 | Milburn Henson | 42 | 1900 Edmondson | Shooting victim |
| 46 | 03/01/06 | Joseph Miller | 26 | 3300 Oakfield Avenue | Double shooting, Thomas Taylor charged |
| 47 | 03/03/06 | Joseph Schlick | 25 | 2300 Herkimer Street | Man asked victim to leave home, victim refused and was shot, Calvin Amos charged |
| 48 | 03/04/06 | Larry Hanes | 30 | Jefferson Street and Montford Avenue | Shooting victim |
| 49 | 03/07/06 | Curtis Lomax | 22 | 1200 West North Avenue | Victim stabbed during fight |
| 50 | 03/13/06 | Kacife Parker | 28 | 1700 East Biddle Street | Shooting victim |
| 51 | 03/14/06 | Kiam Moody | 37 | 1100 Webb Court | Stabbed during altercation, William Fuller charged |
| 52 | 03/18/06 | Arron Godbolt | 43 | 4600 Reisterstown Road | Shooting victim |
| 53 | 03/07/06 | Gregory Rollins | 41 | 500 Mosher Street | Shot after disagreement with girlfriend, Iletha Murdaugh charged |
| 54 | 03/21/06 | Lee Tatum | 73 | 400 East 25th Street | Stabbed by neighbor during argument, Dana White charged |
| 55 | 03/22/06 | Lenard Hawkins | 22 | 23 Lauretta Avenue | Victim shot while standing with friends |
| 56 | Burned 03/22/06 added 08/13/06 | Said Sawab | 36 | 5500 Gwynn Oak Avenue | Found after a fire death caused by arson, Daymar Winbish and Calvin Wilkes charged |
| 57 | 03/22/06 | Carlos Lewis | 21 | Cedloy Street and Wenburn Avenue | Shooting victim |
| 58 | 03/23/06 | Shawnisha Biggus | 17 | 700 Woodbourne Avenue | Victim stabbed after being dragged into woods |
| 59 | 03/26/06 | Darren Green | 21 | 1200 Maple Leaf Court | Victim shot inside home |
| 60 | S 07/24/03 d02/11/06 | Corey Vines | 33 | ? | Victim was shot, Marcus Burnett was tried and found not guilty |
| 61 | 03/30/06 | Victor Richards | 23 | 1300 Montford Avenue | Shooting victim, Jamal Winchester charged |
| 62 | 03/31/06 | Ashley Harris | 19 | 1800 North Charles Street | Shooting victim found in front of Club Choice, Oscar Adams charged |
| 63 | 03/31/06 | Edward Joter | 28 | 900 Luzerne Avenue | Shooting victim found in home |
| 64 | 04/01/06 | Raymond Brown | 27 | 500 Mount Street | Shooting victim found on building's steps |
| 65 | 04/03/06 | Aaron Mackey | 18 | 600 Presstman Street | Shooting victim |
| 66 | 04/03/06 | Nehemiah Johnson | 30 | 4700 Harford Road | Shooting victim found outside Cameo Lounge |
| 67 | 04/06/06 | Noble Johnson | 26 | 500 Sheridan Avenue | Double homicide, victims found in parked vehicle |
| 68 | 04/06/06 | Shelton Turner | 19 | 500 Sheridan Avenue | Double homicide, victims found in parked vehicle |
| 69 | 04/06/06 | Curtis Mitchell | 21 | 2000 Longwood Street | Shooting victim found in home |
| 70 | 04/08/06 | Andre Brantley | 20 | 1800 Braddish Avenue | Shooting victim |
| 71 | 04/09/06 | Darnell Butler | 24 | 3500 Lucille Avenue | Shooting victim |
| 72 | 04/10/06 | Deangelo Hunter | 24 | 3300 Old Frederick Road | Stabbing victim found outside Top Shelf Lounge Steven Fleary charged |
| 73 | 04/11/06 | Charles Sparrow | 53 | 1200 Glyndon Avenue | Stabbing victim found in home, Ray Lucky Williams charged |
| 74 | 04/11/06 | Kimberly Skyers | 32 | 2600 Saint Benedict Street | Victim of blunt force trauma and stabbing Eric Hicks charged |
| 75 | 04/12/06 | Randolph Terrance | 34 | 1900 Division Street | Victim had multiple injuries, died, and then was set on fire |
| 76 | 04/13/06 | Anthony Walker | 24 | 2300 Callow Avenue | Double shooting |
| 77 | 04/15/06 | Franklin Jones | 27 | 3000 Lorena Avenue | Shooting victim found in crashed vehicle |
| 78 | 04/15/06 | Raymond Reveley | 14 | 2200 Roslyn Avenue | Shooting victim, shot by man who fired on a crowd of children |
| 79 | 04/15/06 | Bryant Jones | 42 | 1000 North Augusta Avenue | Victim shot after asking disrespectful person to leave his home, Jamal Charles charged |
| 80 | 04/18/06 | Davon Curtis | 25 | 2600 Loyola Southway | Victim stabbed during fight |
| 81 | 04/20/06 | Robert Atkinson | 47 | 1400 Kuper Street | Shooting victim found in home |
| 82 | 04/20/06 | Vincent Paige | 23 | 3400 Spelman Road | Shooting victim |
| 83 | 04/20/06 | Larry Greene | 32 | 1400 Poplar Grove Street | Shooting victim |
| 84 | 04/21/06 | Jarrell Adams | 20 | 2400 East Oliver Street | Shooting victim, Jamal Winchester charged |
| 85 | 04/23/06 | Jennifer Morelock | 25 | 700 Whitmore Avenue | Double homicide, victims shot in alley after talking to people on street, both victims from Westminster |

| # | Date | Name | Age | Address | Description |
|---|---|---|---|---|---|
| 86 | 04/23/06 | Jason Woyclo | 29 | 700 Whitmore Avenue | Double homicide, victims shot in alley after talking to people on street, both victims from Westminster |
| 87 | 04/26/06 | Kayah Jackson | 14 mo. | 1600 Mountmor Court | Baby died from blunt force trauma, Annette High charged |
| 88 | 04/29/06 | Shaheed Boyd | 24 | 4100 Elderon Avenue | Shooting victim, Paul Barton charged |
| 89 | 04/29/06 | Mary Galston | 34 | 4100 Hyden Court | Stabbing victim found in home |
| 90 | 05/03/06 | Donald Russell | 64 | 1400 Dukeland Street | Victim strangled then dismembered, Octavius Savage charged |
| 91 | 05/04/06 | Kenneth Oakley | 41 | 2300 East Preston Street | Victim shot in home by man chasing him |
| 92 | 05/05/06 | Pierre Alston | 26 | 3600 Edmondson Avenue | Shooting victim found in home, Melvin Faulkner charged |
| 93 | 05/05/06 | Kevin Hodges | 21 | 2200 Guilford Avenue | Shooting victim |
| 94 | 05/07/06 | Zion Clemmons | 16 mo. | 1300 Harlem Avenue | Baby died from blunt force trauma. Shardae Coles, a babysitter, charged |
| 95 | 05/09/06 | David Snow | 24 | 2600 Quantico Avenue | Victim shot in parked vehicle |
| 96 | 05/12/06 | Jeremiah Pinder | 56 | 3400 Round Road | Victim stabbed in home by girlfriend, Antoinette White charged |
| 97 | 05/13/06 | Justice Georgie | ? | 2200 Garrison Boulevard | Victim shot during robbery at the Divine Unity Hair Salon, Kemoni Sterrette charged |
| 98 | 05/16/06 | Aaron Wilson | 23 | 1900 Eagle Street | Double homicide, evidence shows the victims shot each other |
| 99 | 05/16/06 | Steven Wallace | 28 | 1901 Eagle Street | Double homicide, evidence shows the victims shot each other |
| 100 | 05/17/06 | Jamal Gwaltney | 23 | 2500 Marbourne Avenue | Shooting victim |
| 101 | 05/17/06 | Darryl Lang | 38 | 4500 Marble Hall Road | Victim shot during robbery |
| 102 | 05/20/06 | Lynn Lettley | 28 | 1100 Dundalk Avenue | Victim shot at gas station, Victor Banks charged |
| 103 | 05/22/06 | Donte Johnson | 18 | 6000 Amberwood Road | Victim shot in basement of apartment building |
| 104 | 05/23/06 | Whitney Wiley | 19 | Highgate Drive and West Northern Parkway | Shooting victim, Antonna Devonn charged |
| 105 | 05/24/06 | Harry Gillespie | 37 | 800 Glade Court | Victim shot in vehicle |
| 106 | 05/25/06 | Shawn Ruffin | 33 | Woodbourne Avenue | Victim shot in alley during fight, Larry McMillan charged |
| 107 | 05/27/06 | Darnell Spearman | 32 | 1500 Federal Street | Shooting victim |
| 108 | 05/28/06 | Anuradha Ramasamy | 26 | 900 West 31st Street | Allegedly killed by boyfriend, Thomas Ryan, who staged death as a suicide |
| 109 | 05/28/06 | Derrick Taylor | 26 | 400 South Lehigh Street | Victim killed in home after argument about money, Jason Williams charged |
| 110 | 05/28/06 | Donye Blackston | 22 | 200 South Broadway | Shooting victim found behind building |
| 111 | 05/28/06 | Odell Wagner | 36 | 1700 Frederick Avenue | Shooting victim killed on street |
| 112 | 05/29/06 | Donte Hudson | 28 | 700 Madeira Street | Double shooting, both victims found on sidewalk |
| 113 | 05/30/06 | Marlo Lomax | 29 | 1400 East Federal Street | Shooting victim on sidewalk |
| 114 | 05/31/06 | Ournar Bah | 28 | 7100 McClean Boulevard | Shooting victim was taxi driver killed in taxi, Damon Holmes charged |
| 115 | 06/05/06 | Wayne Mathews | 25 | 300 North Guilford Avenue | Double shooting in the Club One parking lot |
| 116 | 06/07/06 | Marlo Hill | 24 | 1800 Saratoga Street | Shooting victim |
| 117 | 06/10/06 | Antonio Alford | 22 | 5500 Kaddon Avenue | Double shooting in second floor apartment, Duane Elkerson charged |
| 118 | 06/11/06 | Larry Thompson | 30 | 1400 Aisquith Street | Shooting victim |
| 119 | 06/11/06 | Darryl Duppins | 24 | 1400 Presstman Street | Shooting victim found in street, Daymond Woodson charged |
| 120 | 06/13/06 | Cynthia Riley | 56 | 5700 Simmonds Avenue | Shooting victim found in home, Raymond Davis charged |
| 121 | 06/13/06 | Kevin Sowell | 20 | 2900 Towanda Avenue | Shooting victim found in street |
| 122 | 06/14/06 | Trey Branch | 21 | 2700 East Preston Street | Shooting victim found in alley |
| 123 | 06/14/06 | Donald Lewis | 23 | 900 East Preston Street | Shooting victim found in street |
| 124 | 06/17/06 | Blackburn John | 28 | 2800 Ellicott Drive | Shooting victim found in street |
| 125 | 06/18/06 | Eric Knight | 26 | 1600 Smallwood Avenue | Victim shot after discussion on street |
| 126 | 06/19/06 | Katiria Delacruz | 24 | 1400 Angelsea Street | Victim shot by man who turned gun on himself but survived, Hector Manzueta charged |
| 127 | 06/19/06 | Ryan Mills | 23 | 2300 Denison Street | Shooting victim, Devren Dashazo charged |
| 128 | 06/20/06 | Demetrius Spears | 32 | 300 East 27th Street | Shooting victim found on sidewalk, George Jenkins charged |
| 129 | 06/21/06 | Anthony Rheubottom | 25 | 2200 Christian Avenue | Stabbing victim. Intimate partner, Angela Davis charged |
| 130 | 06/21/06 | Ja-niya Williams | 4 | 2900 Goodwood Avenue | Victim beaten and raped, Ronald Hilton charged |
| 131 | 06/23/06 | Russell Duckworth | 33 | 4800 Pennington Avenue | Victim beaten and stabbed in home, Natasha Sarchiapone and Mark Brooks charged |
| 132 | 06/24/06 | Robert Lee King | 37 | 600 Aisquith Street | Shooting victim found in vehicle |
| 133 | 06/26/06 | Thomas Batty | 66 | 300 McMechen Street | Shooting victim killed by man with whom he had quarreled |
| 134 | 07/01/06 | Sheldon Anderson | 27 | 2700 Edmondson Avenue | Shooting victim found in street, Stephon Wallace charged |
| 135 | 07/02/06 | Kareem Foster | 21 | 600 Cherrycrest Road | Shooting victim found in street |
| 136 | 07/03/06 | Irvin Conley | 24 | 4300 Glenmore Avenue | Double stabbing on porch of home |
| 137 | 07/08/06 | Elroy Long | 20 | 400 Long Island Avenue | Victim died after being open fired on while in vehicle, Jerry Anderson charged |
| 138 | 07/11/06 | Darrell Robinson | 21 | Calhoun and | Shooting victim |

| # | Date | Name | Age | Address | Description |
|---|---|---|---|---|---|
| | | | | Presstman Streets | |
| 139 07/12/06 | | Gary Shipman | 28 | 500 Sheridan Avenue | Stabbing victim found at gas station Sean Ramseur charged |
| 140 07/12/06 | | Charles Harris | 19 | 500 North Fremont Street | Shooting victim found between two vehicles, Perry Blackstone charged |
| 141 07/13/06 | | Jeremy Jennings | 20 | 1100 Argyle Street | Shooting victim found in home |
| 142 07/14/06 | | Gurnle Edwards | 46 | 1100 East Biddle Street | Shooting victim found in front of his home |
| 143 07/14/06 | | Valerie Chambers | 46 | 400 West Franklin Street | Decomposed stabbing victim found in apartment |
| 144 07/13/06 | | Louis Mills | 43 | 1900 North Monroe Street | Victim from Pennsylvania shot inside Mecon's Lounge |
| 145 07/15/06 | | Dion Williams | 15 | 2700 East Monument Street | Shooting victim found 5 blocks from his home, Demitri Greer charged |
| 146 07/16/06 | | Reubin McFadden | 27 | 900 North Collington Street | Victim was chased and shot, found on sidewalk |
| 147 07/16/06 | | Richard Smith | 34 | 3600 Cottage Avenue | Shooting victim found under parked car |
| 148 07/18/06 | | Rasheed Stevenson | 17 | 400 Whitridge Avenue | Double stabbing, Demetries Sturgis charged |
| 149 07/18/06 | | Christian Nunez | 38 | 4800 Franklintown Road | Shooting victim found on road in Leakin Park |
| 150 07/23/06 | | Bernadette Reed | 47 | 2500 Loyola Southway | Double homicide, shooting in home's basement |
| 151 07/23/06 | | John Carter | 49 | 2500 Loyola Southway | Double homicide, shooting in home's basement |
| 152 07/23/06 | | Norman Handy | 33 | 1900 Guilford Avenue | Shooting victim found in street |
| 153 07/26/06 | | Adjeala Graves | 32 | 5200 Wesley Avenue | Double homicide, victims found in car |
| 154 07/26/06 | | Dante Watson | 34 | 5200 Wesley Avenue | Double homicide, victims found in car |
| 155 07/27/06 | | Douglas Pulley | 27 | 1700 North Warwick Avenue | Victim shoot while being robbed by three men near his home |
| 156 07/28/06 | | Terrel Griffin | 18 | 4000 Park Heights Avenue | Shooting victim found on top of bicycle |
| 157 07/28/06 | | Teon White | 25 | 2100 Koko Lane | Shooting victim found in home, Jonathan Everett charged |
| 158 07/29/06 | | Troy Odoms | 23 | 700 Cooks Lane | Shooting victim found in vehicle |
| 159 07/29/06 | | Santini Stanfield | 26 | 1000 Booth Street | Victim shot by suspect in vehicle |
| 160 07/30/06 | | Irvin Harris | 11 | 2900 Belair Road | Melvin Jones previously convicted pedophile and family friend charge with murder. Victim's mother, Shanda Harris, charged with reckless endangerment |
| 161 Found 07/31/83 added 08/01/06 | | William Gibson | 57 | 2200 East Pratt Street | Decomposed victim found in storage locker in apartment, ME rules homicide 23 years later, Dennis Wallace chargd |
| 162 08/01/06 | | Derron Gaines | 33 | 800 Bethune Road | Shooting victim found in playground |
| 163 08/01/06 | | Davon Hines | 19 | 400 North Chester Street | Double shooting, victim found on sidewalk Brian Fitzgerald charged |
| 164 08/03/06 | | Howard Jones | 26 | 2600 Dulaney Street | Shooting victim found on sidewalk, Davon Pearson charged |
| 165 08/03/06 | | Gerald Edison | 30 | 2600 Evergreen Avenue | Shooting victim found in vehicle |
| 166 08/06/06 | | Horace Fauntleroy | 36 | Edgecombe Circle North | Shooting victim found in street |
| 167 08/06/06 | | Gregory Moore | 40 | 4100 Rollins Avenue | Shooting victim |
| 168 08/09/06 | | Cecil Saunders | 27 | 3600 Pulaski Highway | Assault victim found in motel stairway, Donnell Williams charged |
| 169 08/13/06 | | Jujuan Winfield | 21 | 4900 Nelson Avenue | Shooting victim allegedly killed by suspect on scooter |
| 170 08/14/06 | | Ryan Teel | 23 | 400 Ilchester Avenue | Triple Shooting, Double homicide, victim found on porch |
| 171 08/14/13 | | Rodtinae Jones | 16 | 400 Ilchester Avenue | Triple Shooting, Double homicide, victim found on porch |
| 172 08/15/06 | | Harold Williams | 27 | 2700 Clifton Avenue | Triple Shooting |
| 173 08/19/06 | | Mary Page | 63 | 200 North Culver Street | Victim found in home |
| 174 08/20/06 | | Pepe Benn | 26 | 1800 North Montford | Shooting victim |
| 175 08/20/06 | | William Tillman | 21 | 2800 Spaulding Avenue | Shooting victim |
| 176 08/21/06 | | Kevin Sharpe | 35 | 3700 Beehler Avenue | Shooting victim found in vehicle |
| 177 08/25/06 | | Juliet Robinson | 35 | 2500 Jefferson Street | Shooting victim |
| 178 08/27/06 | | Damien Studivant | 21 | 2800 Round Road | Double shooting |
| 179 08/30/06 | | Rickie Tinsley | 21 | 500 Pontiac Avenue | Victim shot while riding his bike |
| 180 09/02/06 | | Darren Wilson | 31 | 3500 Lucille Avenue | Shooting victim, Eddie Hawkins charged |
| 181 09/03/06 | | Andre Dudley | 24 | 800 West Lexington Street | Shooting victim found in vehicle |
| 182 09/04/06 | | Michael Freeman | 32 | 3400 Park Heights Avenue | Victim shot on his own porch, Zachary James charged |
| 183 09/05/06 | | Lamont Moore | 25 | 3300 Ambrose Avenue | Shooting victim |
| 184 09/06/06 | | Antonio Brown | 16 | 100 Diener Place | Victim shot in front of apartment complex |
| 185 09/06/06 | | Derrick Miller | 27 | 600 North Montford Avenue | Shooting victim |
| 186 09/07/06 | | Darrell Artis | 25 | 7100 McClean Boulevard | Victim shot during fight in parking lot, LaTosca McCullough, Tavon Tyner and Marquise Brown charged |
| 187 09/08/06 | | Biafra Thomas | 46 | 4800 Raymonn Avenue | Victim asphyxiated in her own home |
| 188 09/10/06 | | Anthony Taylor Jr. | 20 | 300 East 22nd Street | Double homicide, Victims shot during fight Eric Tate charged |
| 189 09/10/06 | | Adrian Holiday | 19 | 300 East 22nd Street | Double homicide, Victims shot during fight, Eric Tate charged |
| 190 09/10/06 | | Steven King | 19 | 3700 Eighth Street | Victim shot in home during robbery |
| 191 09/11/06 | | George Young | 23 | 1100 Cleveland Street | Shooting victim |
| 192 09/14/06 | | Antonio Gilmore | 38 | 601 Homestead Street | Shot during robbery at Blockbuster Video |

| # | Date | Name | Age | Location | Description |
|---|------|------|-----|----------|-------------|
| 193 | 09/15/06 | David Galloway | 19 | 2300 Norfolk Street | Shooting victim found behind public housing complex, Braynell Gilchrist charged |
| 194 | 09/17/06 | Edward Curtis | 17 | 3700 East Baltimore Street | Shooting victim |
| 195 | 09/18/06 | Floyd Cook | 56 | 1600 North Fulton Street | Victim received fatal gunshot from stray bullet |
| 196 | 09/18/06 | Jamie Randall | 30 | 2300 West Lanvale Street | Double homicide, victims found in vehicle |
| 197 | 09/18/06 | Reginald Rucker | 32 | 2300 West Lanvale Street | Double homicide, victims found in vehicle |
| 198 | 09/21/06 | Devin Wright | 26 | 700 Gold Street | Shooting victim |
| 199 | 09/23/06 | Cory Harrison | 27 | 2000 Robb Street | Shooting victim, Derrick Wallace charged |
| 200 | 09/25/06 | Andrew Jackson | 26 | 2300 Mount Royal Terrace | Shooting victim, Sharod Mattox charged |
| 201 | 09/26/06 | Davon Sampson | 18 | 3300 St. Ambrose Avenue | Shooting victim |
| 202 | 09/26/06 | Janice Letmate | 67 | 4000 Biddison Lane | Shooting victim, Devon Richardson charged |
| 203 | 09/26/06 | Lateef Chase | 25 | 500 Parkin Street | Shooting victim found on bicycle |
| 204 | 09/28/06 | Sultan Matthews | 19 | 1200 North Dukeland Street | Victim shot in home, Kevin Parker charged |
| 205 | 09/28/06 | Gary Nelson | 47 | 1700 East 30th Street | Victim stabbed on porch of his own home |
| 206 | 09/29/06 | Lamont Brown | 20 | 2700 Quantico Avenue | Victim shot while walking |
| 207 | 09/30/06 | Victor Council | 43 | 1400 West Baltimore Street | Shooting victim |
| 208 | 09/30/06 | Jamelle Carter | 18 | 2500 Oswego Avenue | Victim shot while standing with friends |
| 209 | 09/30/06 | Unidentified Person | ? | ? | City Paper failed to list one victim from the week of September 30 2006 |
| 210 | 10/02/06 | Stuart Griffith | 35 | 21 South Calvert Street | Victim shot after fight at Gossip's Club |
| 211 | 10/02/06 | Billy Horn | 47 | 3800 Lyndale Avenue | Neighbor shot victim after disagreement Marvin Ferguson charged |
| 212 | 10/02/06 | Bernard Davis | 16 | 1700 North Castle Street | Double shooting, Gerry Boatwright and Davon Gardner charged |
| 213 | 10/04/06 | Herbert Betz | 30 | St. Margaret and Jeffrey Streets | Victim shot during robbery |
| 214 | 10/04/06 | Sean Dill | 32 | 1200 North Luzerne Avenue | Double shooting |
| 215 | 10/07/06 | Leonard Garrett | 24 | 800 Winans Way | Shooting victim |
| 216 | 10/09/06 | Donnie Blanding | 22 | Lewiston and Gist Avenues | Shooting victim found in vehicle |
| 217 | 10/12/06 | Glenn Carlton | 38 | 600 West Franklin Street | Victim shot in apartment |
| 218 | 10/15/06 | Antonio Hill | 16 | 100 North Poppleton Street | Shooting victim |
| 219 | 10/17/06 | Marcus Rogers | 26 | 1000 St. Paul Street | Victim was beaten and found after apartment fire Zukael Stephens charged |
| 220 | 10/17/06 | Cornett Robinson | 16 | 2800 Carver Road | Shooting victim |
| 221 | 10/22/06 | Joel Bradley | 39 | 700 Cumberland Street | Victim was beaten and may have been robbed Donavan White charged |
| 222 | 10/23/06 | Glenard Byrd | 19 | 1000 North Bond Street | Shooting victim |
| 223 | 10/25/06 | Travis Wake | 23 | 300 West 27th Street | Shooting victim |
| 224 | 10/25/06 | Donte Johnson | 20 | 1500 Shields Place | Shooting victim found near his home |
| 225 | 10/26/06 | Leonard Brown | 25 | 1400 North Milton Avenue | Shooting victim |
| 226 | 10/27/06 | Kevin Washington | 28 | 1700 Ashburton Street | Shooting victim |
| 227 | 10/28/06 | Arnilo Handy | 30 | 2700 Tivoly Avenue | Victim shot in his home during robbery |
| 228 | D 09/12/06 a 10/31/06 | Anthony Durso | 2 | 1200 East Patapsco Avenue | Victim was beaten Medical Examiner ruled homicide |
| 229 | 10/31/06 | Gregory Welsh | 32 | 6000 Marluth Avenue | Shooting victim found on his front porch after assault Kenneth Brown and Kenneth Megginson charged |
| 230 | 10/31/06 | Antonio Williams | 32 | Cator and Elkader Road | Double homicide Shooting |
| 231 | 10/31/06 | Jonathan Savage | 35 | Elkader and 41st Street | Double homicide Shooting |
| 232 | 11/03/06 | Gap Suh | 61 | 400 West Mulberry Street | Victim stabbed after minor car accident |
| 233 | 11/05/06 | Justin Owens | 23 | 4800 Melbourne Road | Shooting victim found outside in sleeping bag |
| 234 | 11/07/06 | Nicole Edmund | 17 | 300 West North Avenue | Stabbing victim found under I-83 overpass Kendrick McCain and Lataye King charged |
| 235 | 11/10/06 | Donald Samuels | 55 | 4500 Pennington Avenue | Shot inside pickup truck |
| 236 | 11/11/06 | Shawn Tiller | 16 | 2500 East Hoffman Street | Shooting victim |
| 237 | 11/11/06 | Brian Pope | 36 | 2100 Garrison Boulevard | Shooting victim found in home |
| 238 | 11/17/06 | Alfred Williams | 26 | Pennsylvania Avenue and Preston Street | Shooting victim found in street |
|  |  |  |  | 500 North Streeper |  |

| | # Date | Name | Age | Location | Description |
|---|---|---|---|---|---|
| X | 239 11/19/06 | Lamont Jackson | 21 | Street | Victim shot in doorway of his own home |
| | 240 11/19/06 | Dennis O'Neil Bryant | 38 | Aiken Street and Hargest Lane | Victim shot in vehicle, Tavon Caldwell charged |
| | 241 11/21/06 | Tereem Taylor | 21 | 1700 West Saratoga Street | Shooting victim found on sidewalk, Kenneth Lathan and Jamal Lloyd charged |
| X | 242 11/23/06 | John Dowery | 38 | 700 Bartlett Street | Double shooting, victim shot in Kozy Korner Bar |
| X | 243 11/25/06 | Shawn Reed | 32 | 400 East 22nd Street | Shooting victim found in vehicle |
| X | 244 11/26/06 | Michael Griffin | 43 | Groveland Avenue and Garrison Blvd | Stabbing victim, Miquel Johnson charged |
| X | 245 11/26/06 | Bernard Simon | 13 | 1200 Shellbanks Road | Triple shooting, three brothers shot in home |
| X | 246 11/28/06 | Andre Alexander | 21 | 4300 Fairfax Avenue | Shooting victim |
| X | 247 11/30/06 | Dennis Talley | 48 | 3800 Towanda Avenue | Shooting victim |
| | 248 12/01/06 | Jason Sanders | 17 | 1300 North Chester Street | Victim stabbed by brothers during fight, Jermaine Sanders charged |
| X | 249 12/01/06 | Hamel Hurley | 25 | 1500 Shadyside Road | Victim shot during robbery behind his own home |
| X | 250 12/02/06 | Rassan Jones | 20 | 300 West Lafayette Avenue | Shooting victim |
| X | 251 12/05/06 | Jamal Dailey | 19 | 3700 Flowerton Avenue | Shooting victim found in alley |
| X | 252 12/06/06 | Travon Johnson | 19 | 3400 Kenyon Avenue | Shooting victim |
| X | 253 12/10/06 | Guiliano Santos | 17 | Monument Street and Ellwood Avenue | Victim exited pickup truck after being shot |
| X | 254 12/11/06 | Theodore Caldwell | 29 | West North Avenue and North Mount Street | Shooting victim found on sidewalk |
| X | 255 12/12/06 | Steven Richey | 41 | 3400 Cliffmont Avenue | Shooting victim shot after discussion near his own vehicle |
| X | 256 12/12/06 | Joseph Simms | 41 | 3900 Bonner Road | Shooting victim shot 1 block from his home |
| X | 257 12/12/06 | Keith Barney | 30 | 4400 Haddon Avenue | Shooting victim found in parking lot |
| X | 258 12/13/06 | Ronald Stewart | 29 | 4000 Belvedere Aveue | Shooting victim found in street |
| X | 259 12/15/06 | Christopher Whitfield | 22 | 3800 Hanover Street | Shooting victim found on sidewalk |
| X | 260 12/15/06 | Kevin West | 39 | 2800 Virginia Avenue | Shooting victim |
| X | 261 12/16/06 | Kurt Malone | 19 | 1300 McCullogh Street | Double shooting, victims shot in vehicle |
| X | 262 12/16/06 | James Williams | 44 | 3700 Fairhaven Avenue | Victim shot during robbery in his own home |
| X | 263 12/17/06 | Kenneth Worrell | 28 | 800 Bethune Road | Victim shot outside his own home, Darnell Edmonds convicted in 2009 of 2nd degree murder, Edmonds is a 2013 homicide victim |
| | 264 12/19/06 | Annette Bradney | 31 | 800 North Stricker Street | Victim beaten |
| X | 265 12/20/06 | Ralston Holder | 52 | 5700 Hazlewood Circle | Victim shot in parking lot |
| X | 266 12/20/06 | Everton Holder | 41 | 3300 East Fayette Street | Double shooting victim is the brother of Ralston Holder shot earlier at another location |
| X | 267 12/21/06 | Wesley Harris | 22 | 2400 Winchester Street | Shooting victim found on lawn |
| X | 268 11/05/06 added 12/30/06  S 04/26/06 d | Larry Parks | 37 | 3900 West Forest Park Avenue | Shooting victim |
| X | 269 12/22/06 | Erik Johnson | 34 | 700 North Monroe Street | Shooting victim found near curb |
| | 270 12/23/06 | Freddie Thornton | 69 | 4300 Franklintown Road | Stabbing victim left in Leakin Park Timothy Izzard charged |
| X | 271 12/24/06 | Stephen Brunson | 37 | 2900 Silver Hill Avenue | Shooting victim found on lawn |
| | 272 12/26/06 | Jose Contreras | 34 | 3200 East Baltimore Street | Double shooting men shot during robbery. Kevin Barnes, Kevin White and Lennard Jones charged |
| X | 273 12/27/06 | Willie Lewis | 46 | 2500 Garrett Avenue | Double shooting, victim shot during home invasion |
| X | 274 12/28/06 | Ricardo Langford | 38 | 2700 Kinsey Street | Shooting victim |
| X | 275 12/30/06 | Lebard Jones | 30 | North Avenue and Carey Street | Shooting victim |

## 2006 Baltimore City Homicide Locations Mapped

Exhibit #4

These are just pages of case law to support my Claims since
I don't have any of my discovery/files to support my claims in
the form of evidence. Pages 1-3 of the federal nexus in United
States v. Snyder (2017). 1 page to show 2241 is proper motion
to file actual innocence claim. 1 page to show McQuiggin v.
Perkins is correct case to support actual innocence claim. Pages
1-2 of Socha v. Boughton (2014) to support the equitable tolling
Claim of me never receive my discovery/files to file an adequate
petition. The hurdles i faced were insurmountable and prejudice. Also,
3 other pages to support actual innocence and inability to access
Vital papers.

Your honor, I have very little education, I did not finish School.
Attorney William B. Purpura had me tested for the capital
murder trial and the psychologist testified that my IQ is 77
which is boarderline Retarded and i do not think like normal
people. Here is a copy.

Patrick Byers

U. S. V. Snyder ( 864 F. 3d )

## A. Federal Witness Tampering Under 18 U.S.C. § 1512

On appeal Snyder argues there is insufficient evidence to show a "reasonable likelihood" that Mars would have communicated with a federal officer if she had not been murdered. We review the sufficiency of the evidence by asking whether, "viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Resnick*, 823 F.3d at 893, citing *Jackson*, 443 U.S. at 319 (emphasis omitted).

The federal witness-tampering statute imposes a mandatory life sentence on "Whoever kills ... another person, with intent to ... prevent the communication by any person to a law enforcement officer or judge *of the United States* of information relating to the commission or possible commission of a Federal offense." 18 U.S.C. § 1512(a)(1)(C) (emphasis added). The same sentence applies to a conspirator. § 1512(k). By specifying officer "of the United States," § 1512 requires showing a reasonable likelihood that the victim would have communicated with a *federal officer*, not a state or local officer. The statute does not require proof that the defendant knew the federal status of the officer or the underlying proceeding. See § 1512(g).

In *Fowler v. United States*, the Supreme Court addressed how § 1512 applies to a defendant who kills a victim to prevent her from speaking to law enforcement generally but not to federal officers in particular. 563 U.S. 668, 672, 131 S. Ct. 2045, 179 L. Ed. 2d 1099 (2011). In such cases, the Supreme Court instructed courts to consider the counterfactual world in which the victim is not murdered and to ask with whom she would have communicated. To establish the required federal nexus, the "Government must show *a reasonable likelihood* that, had, e.g., the victim communicated with law enforcement officers, at least one relevant communication would have been made to a federal law enforcement officer." *Id.* at 677. The government need not prove the federal nexus beyond a reasonable doubt, nor even by a preponderance of the evidence. *Id.* at 678. Rather the government must show that the likelihood of the victim communicating with a federal officer was "more than remote, outlandish, or simply hypothetical." *Id.*

Although this evidentiary standard is low, it is not toothless. In adopting the {865 F.3d 497} reasonable likelihood standard, *Fowler* specifically rejected an even lower "possibility standard" under which it would be enough if it was *possible* that the victim would have communicated with a federal officer. *Id.* at 676-77. The Court said this approach runs contrary to the language and federal scope of the statute: "because of the frequent overlap between state and federal crimes, the use of a standard based on the word 'possible' would transform a federally oriented statute into a statute that would deal with crimes, investigations, and witness tampering that, as a practical matter, are purely state in nature." *Id.* at 677. Moreover, the Court noted that because of the extensive overlap between state and federal crimes, the commission of a federal crime, without more, generally does not satisfy the reasonable likelihood standard. See *id.* at 676.

On appeal, Snyder argues that there is virtually no evidence that Mars would have communicated with a federal officer about the Circle K robbery. In the immediate aftermath of the Circle K robbery, only state and local officials investigated the crime. This is unsurprising, Snyder argues, because statistical evidence shows that robberies of this kind are rarely prosecuted in federal court. The government responds in several ways. Before assessing its response, we outline two separate paths the government can take to show the required federal nexus under § 1512: one path if the underlying crime would have been prosecuted in federal court, and a second if it would have been prosecuted in state court.

First, if the underlying crime (here, the Circle K robbery) would have been prosecuted in federal

A07CASES                                              1

© 2018 Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved. Use of this product is subject to the restrictions and terms and conditions of the Matthew Bender Master Agreement.

~~court, then it is reasonably likely that the witness would have spoken with a federal officer during the course of that prosecution.~~ For instance, in 2015 the U.S. Attorney's Office for the Southern District of Indiana decided to prosecute in federal court all pharmacy robberies, which had spiked in the wake of the opioid addiction crisis. See Chris Davis, *U.S. Attorney: There Have Been Fewer Pharmacy Robberies in Indiana*, WIBC (May 25, 2017),  . If a defendant murdered a witness under those circumstances, *Fowler* would likely be satisfied. The underlying crime (the pharmacy robbery) would have been prosecuted in federal court, and it is reasonably likely that the witness would have communicated with a federal officer during the course of that federal prose-cution.

Second, even if the underlying crime would not have been prosecuted in federal court, the government can still satisfy § 1512 by showing a reasonable likelihood that the victim would have communicated with a federal officer who was assisting the state prosecution of the underlying crime. The district court relied on this approach when it denied Snyder's Rule 29 motions. On appeal, the government argues along both paths.

The government first maintains that the Circle K robbery would have been prosecuted in federal court because it involved three federal crimes. The government notes the "fed-eral nature" of Snyder's crimes, and it identifies at least six other convenience store robberies that have been prosecuted in federal court in the Central District of Illinois since Snyder's robbery. The government also notes the "regularity with which both felon-in-possession and § 924(c) charges are brought in federal court."

This evidence falls short. Section 1512 is not satisfied simply because Snyder's underlying crimes amounted to federal offenses. *Fowler* expressly rejected {865 F.3d 498} that argument, which would have reached too far. See 563 U.S. at 676-77. Since there is extensive overlap between state and federal crimes, the fact that the Circle K robbery could be prosecuted under the Hobbs Act, without more, does not satisfy § 1512. We also agree with the district court that it is quite unlikely that this robbery and the associated firearm charges would have been prosecuted in federal court if there had been no murder. The six Hobbs Act robbery cases the government cites do not persuade us otherwise. The record contains data from the FBI's "Uniform Crime Reports," which show that hundreds of commercial robberies occurred in the Central District of Illinois during the same timeframe. If only six were prosecuted under the Hobbs Act, this number does not help but hurts the government's position.

The government also pursues the second path to satisfy § 1512, asserting that even if Snyder's robbery would have been prosecuted in state court, it is reasonably likely that Mars would have communicated with one of the federal officers assisting the Decatur Police. The Decatur deputy police chief testified that it "would be a very real possibility" that the Decatur Police would discuss an armed robbery with federal authorities. The Decatur Police Department has a dedicated space for the FBI, which is occupied by one full-time FBI agent and a Decatur Police detective who is also an FBI task force officer. In Snyder's case, the government notes, the FBI supported Decatur Police by unlocking a cellphone. In addition, Decatur Police asked the FBI to help clarify the image of one of the masked gunmen's tattoos, which was captured by the Circle K security camera.

This evidence is also insufficient. The cellphone that the FBI helped unlock was actually *Paige Mars'* cellphone. If Mars had not been murdered and had instead cooperated with law enforcement as a witness, there would have been no need to unlock her phone. More fundamentally, evidence that a federal officer assisted with cellphone forensics does not satisfy § 1512 as applied to the murder of an eyewitness. The statute requires a reasonable likelihood that the victim herself would have communicated with a federal officer. Technical support is not communication with a witness. Federal officers can assist state prosecutions in many ways, such as by providing information from the FBI's

A07CASES                                      2

© 2018 Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved. Use of this product is subject to the restrictions and terms and conditions of the Matthew Bender Master Agreement.

DNA database, fingerprint analysis, cellphone forensics, etc. But evidence of such technical assistance does not show a reasonable likelihood that the eyewitness in question would have communicated with a federal of-ficer.

The same analysis applies to the Decatur Police's request for FBI assistance to identify the tattoo captured by the Circle K security camera. This form of technical assistance would not likely have involved a federal officer communicating with a witness like Mars. That proved to be the case here. The FBI did nothing in response to the request by Decatur Police because another witness named Burwell came forward and identified Snyder. If the FBI would have supported the state prosecution by communicating with witnesses, it presumably would have communicated with Burwell. That did not happen. Whether proceeding on the first or second path, the government failed to offer evidence sufficient to show a reasonable likelihood that if Mars had not been murdered, she would have communicated with a federal law enforcement officer about the Circle K robbery.

Our holding fits comfortably along the spectrum of decisions by other circuits applying *Fowler's* "reasonable likelihood" standard to various forms of witness tampering {865 F.3d 499} under § 1512, from corrupt persuasion up to murder. The decisions upholding § 1512 convictions involved much stronger showings of a federal nexus than present here. See, e.g., *United States v. Veliz*, 800 F.3d 63, 73-75 (2d Cir. 2015) (defendant's "offenses were not 'purely state in nature'-he committed multiple related crimes across multiple states, with multiple accomplices," and at time of the witness tampering, defendant was already under federal investigation); *United States v. Smith*, 723 F.3d 510, 518 (4th Cir. 2013) (underlying crime involved "large scale gang activity and drug trafficking"); *United States v. Ramos-Cruz*, 667 F.3d 487, 497-98 (4th Cir. 2012) (federal task force was investigating defendant's large gang, and gang informants had already spoken with federal officers).

The federal nexus in this case is weak even when compared to other § 1512 decisions in favor of defendants. See, e.g., *United States v. Chafin*, 808 F.3d 1263, 1273-75 (11th Cir. 2015) (reversing § 1512 conviction for insufficient evidence of federal nexus where sheriff embezzled more than $10,000 in federal funds); *United States v. Tyler*, 732 F.3d 241, 252 (3d Cir. 2013) (reversing denial of post-conviction petition by defendant who helped murder informant who was cooperating with state task force that regularly referred cases to federal DEA). In *Fowler* itself, the defendant murdered a police officer who learned Fowler was preparing to rob a bank. See 563 U.S. at 670. Murdering a police officer in connection with a bank robbery is much more likely to be prosecuted in federal court than the Circle K robbery at issue here.2

Taken together, the evidence does not support a reasonable likelihood that Mars would have communicated with a federal officer if she had not been murdered. Without the murder, it is unlikely the Circle K robbery would have been prosecuted in federal court. And although federal officers may have assisted with a state prosecution, there is insufficient evidence to find a reasonable likelihood that any federal officer would have assisted in a capacity where he would have communicated with eyewitnesses.

© 2018 Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved. Use of this product is subject to the restrictions and terms and conditions of the Matthew Bender Master Agreement.

*3rd Cir*

On September 12, 2013, Bruce filed a *pro se* petition for a writ of habeas corpus under 28 U.S.C. § 2241 in the United States District Court for the Middle District of Pennsylvania, the district of his confinement. Citing *Fowler*, Bruce contended that he is actually innocent of his two convictions for witness tampering murder.

The Magistrate Judge initially recommended that Bruce's petition be dismissed for lack of jurisdiction due to{2017 U.S. App. LEXIS 9} his failure to satisfy the gatekeeping requirements of 28 U.S.C. § 2255(e)'s saving clause. The following day, however, this Court decided *United States v. Tyler*, 732 F.3d 241 (3d Cir. 2013), which permitted a prisoner who had filed successive § 2255 motions to pursue a *Fowler*-based actual innocence claim under § 2241. In the wake of *Tyler*, the District Court declined to adopt the Magistrate Judge's recommendation, and remanded the matter for further proceedings.

On remand, the Magistrate Judge found that jurisdiction under § 2241 was proper, but recommended that Bruce's petition be denied. *Bruce v. Thomas*, 2014 U.S. Dist. LEXIS 147975, 2014 WL 5242407 (M.D. Pa. June 20, 2014). The Magistrate Judge concluded that Bruce had failed to show that it was more likely than not that no reasonable juror would have convicted him of witness tampering murder based on *Fowler*'s interpretation of 18 U.S.C. § 1512(a)(1)(C). 2014 U.S. Dist. LEXIS 147975, [WL] at *10. The District Court adopted the Magistrate Judge's report and recommendation in its entirety and denied Bruce's petition. *Bruce v. Thomas*, 2014 U.S. Dist. LEXIS 146770, 2014 WL 5242409 (M.D. Pa. Oct. 15, 2014).

© 2021 Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved. Use of this product is subject to the restrictions and terms and conditions of the Matthew Bender Master Agreement.

by a jury. Because the petitioner in *Bousley* pled guilty, all evidence of innocence was "new" evidence-there was no initial trial at which "old" evidence was presented. *See House*, 547 U.S. at 538 (noting that "a *Schlup* claim involves evidence the trial jury did not have before it"); *Bousley*, 523 U.S. at 630 (Scalia, J., dissenting) (noting the problems with applying the "new evidence" requirement of the actual-innocence exception to cases involving pleas). Thus, the term "new evidence"{2015 U.S. Dist. LEXIS 6} did not make sense in the plea context, but the Court did require the district court to examine "all the evidence" and permitted the parties to "present any admissible evidence" on remand. *Bousley*, 523 U.S. at 623-24.

Case law subsequent to *Bousley* supports this conclusion. Since *Bousley*, the Supreme Court has reiterated the requirement that petitioner show new evidence of innocence in order to take advantage of the actual-innocence exception without qualifying that the new evidence requirement does not apply when certain underlying constitutional claims, like insufficient evidence, are asserted. *See, e.g., McQuiggin*, 133 S. Ct. at 1935 ("To invoke the miscarriage of justice exception, . . . a petitioner must show that it is more likely than not that no reasonable juror would have convicted him in the light of the new evidence." (internal quotations omitted)); *House*, 547 U.S. at 537 ("To be credible a gateway claim requires new reliable evidence."(internal quotations omitted)). Since *Bousley*, the Seventh Circuit has also consistently required a showing of new evidence in order to take advantage of the actual-innocence exception. *See McDowell v. Lemke*, 737 F.3d 476, 483 (7th Cir. 2013) ("[P]roof [of actual innocence] must take the form of 'new reliable evidence.'"); *Gomez v. Jaimet*, 350 F.3d 673, 680 (7th Cir. 2003) ("[M]erely putting a different spin on evidence that was presented{2015 U.S. Dist. LEXIS 7} to the jury does not satisfy the *Schlup* requirements, but if a petitioner comes forth with evidence that was genuinely not presented to the trier of fact then no bar exists to the habeas court evaluating whether the evidence is strong enough to establish the petitioner's actual innocence claim."); *see also U.S. v. Wade*, 587 Fed. Appx. 200, 201 (5th Cir. 2014) (holding that petitioner, who brought an insufficient evidence claim, failed to show new evidence of innocence and thus could not invoke the actual-innocence exception); *Whitworth v. Price*, 90 Fed. Appx. 458, 460 (6th Cir. 2004) (same).

In this case, petitioner was convicted by a jury after a trial; therefore, he must produce new evidence that was not considered by the jury in order for the actual-innocence exception to apply.

Petitioner contends that even if new evidence is required, he has shown new evidence to satisfy the *Schlup* standard. Specifically, he argues that his trial counsel was ineffective because he focused on an alibi defense and failed to present the jury with alternative defenses, and that these alternative defenses constitute new evidence which the jury did not consider. In requiring new evidence of innocence, the Supreme Court gave examples of the type of "new reliable evidence" it had in mind, listing "exculpatory scientific{2015 U.S. Dist. LEXIS 8} evidence, trustworthy eyewitness accounts, or critical physical evidence." *Schlup*, 513 U.S. at 324. Petitioner's showing of "new evidence" does not meet this standard. Alternate defenses themselves are not evidence. *See, e.g.*, Seventh Circuit Federal Civil Jury Instructions § 1.04 (2005) ("Evidence" consists of "testimony of the witnesses, the exhibits admitted into evidence, and stipulations."). Nor is evidence that petitioner's counsel was ineffective for failing to raise those alternate defenses. By asking me to consider alternate defenses, petitioner does not present new evidence; rather, he asks me to review evidence admitted at trial in a new light. Without a showing of reliable new *evidence*, petitioner cannot invoke the actual innocence exception to overcome the time bar and procedural default. Thus, I will dismiss petitioner's claims as time-barred and procedurally defaulted.

© 2019 Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved. Use of this product is subject to the restrictions and terms and conditions of the Matthew Bender Master Agreement.

43310037

*Socha v. Boughton (3014)*

SCANNED

JUN 04 2019

Poor representation by an attorney calls for a more nuanced appraisal. Defects in performance, whether through the attorney's own fault or attributable to extenuating circumstances, do not inevitably support equitable tolling, but they are relevant. The Supreme Court has identified some types of errors (such {2014 U.S. App. LEXIS 24} as miscalculation of a deadline) that do not warrant relief, it calls them "garden variety" claims of excusable neglect, meaning that these errors are too common to be called "extraordinary." *Holland*, 560 U.S. at 651-52 (citing *Irwin v. Dep't of Veterans Affairs*, 498 U.S. 89, 96, 111 S. Ct. 453, 112 L. Ed. 2d 435 (1990)). An attorney's incapacity is also not necessarily a ground for equitable tolling. *Modrowski v. Mote*, 322 F.3d 965, 968 (7th Cir. 2003). The important thing is the full picture with which an inmate is contending. Here, it is {763 F.3d 686} notable that Sommers was not Socha's attorney for the period relevant to our inquiry; his representation terminated with the conclusion of Socha's direct appeal, and thus he had no legal authority to act on Socha's behalf. His failure to turn over Socha's file, then, was not "garden variety" neglect of a client, but rather a rarer instance where the materials necessary to conducting one's legal affairs were being unjustifiably held by a person who had no ability to use them. (Indeed, Sommers was on thin ice ethically speaking, given Wisconsin Rule of Professional Conduct 1.16(d), applicable in the Eastern District of Wisconsin, which requires a lawyer who has terminated representation to take reasonable steps to protect a client's interests, including specifically surrendering papers and property to the client.)

It {2014 U.S. App. LEXIS 25} does not matter that one could look at each of the circumstances encountered by Socha in isolation and decide that none by itself required equitable tolling. The mistake made by the district court and the state was to conceive of the equitable tolling inquiry as the search for a single trump card, rather than an evaluation of the entire hand that the petitioner was dealt. In *Holland*, the Supreme Court disapproved the use of such a single-minded approach. It wrote instead that a person's case is to be considered using a "flexible" standard that encompasses all of the circumstances that he faced and the cumulative effect of those circumstances. Similar cases may shed some light on the claim, but "courts exercise judgment in light of prior precedent ... with awareness of the fact that specific circumstances, often hard to predict in advance, could warrant special treatment in an appropriate case." *Holland*, 560 U.S. at 650.

The hurdles Socha faced were nearly insurmountable, if he hoped by July 16 to create an adequate petition that met the criteria of Rule 2(c) of the habeas corpus rules. For nearly 90% of his allotted one year, Socha was without access to any of the documents pertaining to his legal proceedings through no fault of his own. He {2014 U.S. App. LEXIS 26} made repeated requests for the documents both to his former lawyer and eventually to that lawyer's superior. He tried to secure new counsel, who would have secured the documents for him. The district court faulted Socha for taking no alternative measures while his file languished in the possession of his former attorney, but this conclusion is misguided. The state concedes in its brief that Socha began seeking alternative avenues to file for federal relief while he was still without his file; for example, he worked with inmate Wagner to obtain some documents directly from the state court. Even if he had not done so, it is unclear what more Socha could have done without access to his file. Even the most seasoned attorneys do not, and should not, draft motions, memoranda, or briefs without access to the basic files underlying the actions. They likely would face discipline if they attempted to reconstruct the case from memory alone. To expect Socha to have a photographic memory permitting him to write a petition without his file is unrealistic.

After Socha finally received his file, new obstacles stood in his way: limited library access and the rapid expiration of his time. Even ignoring his {2014 U.S. App. LEXIS 27} allegations about the severe limitations on his library access and limiting our consideration to the uncontroverted facts (eighty minutes of access every two weeks, two computers for 250 inmates, and the inability to take legal

A07CASES                                                                                         1

© 2019 Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved. Use of this product is subject to the restrictions and terms and conditions of the Matthew Bender Master Agreement.

*[handwritten margin note, left side:]* I still never received my Discovery to this day

*[handwritten note, bottom:]* Still i don't have my discovery or anything pertaining to my case. I am again forced to file a petition without any evidence from my files that would no doubt support my claims.

*[handwritten:]* 43310037

materials back to his cell), it still would have been nearly impossible for Socha to review the disorganized file, gather background legal materials, and craft a meaningful petition before the deadline. (The state tells us that Socha was not in segregation{763 F.3d 687} for much of the year, but the record shows that he was in segregation for the entire period between the receipt of his files and the filing deadline.) At 80 minutes every other week, the most Socha could have gotten was about four hours of library time in the 40 days he had before his petition was due (assuming that he had three sessions over five weeks, at 80 minutes each). He had little to no opportunity to work with his materials in his cell.

A07CASES                                        2

© 2019 Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved. Use of this product is subject to the restrictions and terms and conditions of the Matthew Bender Master Agreement.

43310037

{825 F.3d 350} The district court recognized that{2016 U.S. App. LEXIS 3} the deadline in § 2244(d) is subject to equitable tolling if "extraordinary circumstances" prevent timely filing. See *Holland v. Florida*, 560 U.S. 631, 649, 130 S. Ct. 2549, 177 L. Ed. 2d 130 (2010); *Pace v. DiGuglielmo*, 544 U.S. 408, 418, 125 S. Ct. 1807, 161 L. Ed. 2d 669 (2005). Abandonment by counsel is one ~~potentially extenuating circumstance, see *Maples v. Thomas*, 565 U.S. 266, 132 S. Ct. 912, 181 L.~~ Ed. 2d 807 (2012), and <mark>inability to access vital papers</mark> is another, see *Socha v. Boughton*, 763 F.3d 674 (7th Cir. 2014); *Estremera v. United States*, 724 F.3d 773, 777 (7th Cir. 2013). The Supreme Court observed in *Christeson v. Roper*, 135 S. Ct. 891, 190 L. Ed. 2d 763 (2015), that a prisoner's mental disability in conjunction with abandonment by counsel may justify the appointment of new counsel to explore the question whether the disability tolls the period of limitations. Nonetheless the district court denied Schmid's petition as untimely. 2014 U.S. Dist. LEXIS 85571 (S.D. Ind. June 24, 2014). The judge stated that Schmid had failed to explain which particular documents she needed in order to file a petition under § 2254 or why she needed them. With respect to Schmid's claim of mental disability, the court said nothing at all.

We must assume for the purpose of this appeal that Schmid is afflicted by some mental disability-perhaps schizophrenic delusions (her defense at trial), perhaps post-traumatic stress disorder, perhaps both, or perhaps something else. Counsel representing Indiana was unable to tell us at oral argument what a verdict of "guilty but mentally ill" means under that state's practice. But the fact that Schmid has *some* kind{2016 U.S. App. LEXIS 4} of mental problem-her substantive constitutional argument is that she was not competent to stand trial in the first place-colors everything else in the case. Schmid could not explain to the district judge's satisfaction either the nature of her disability (and how it impeded timely filing) or why she needed the papers that former counsel did not turn over until October 2013. Yet a mental disability might itself prevent an unrepresented prisoner from elucidating such matters.

© 2019 Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved. Use of this product is subject to the restrictions and terms and conditions of the Matthew Bender Master Agreement.

## ACTUAL INNOCENCE

A credible showing of "actual innocence" may allow a prisoner to pursue his constitutional claims on the merits notwithstanding the existence of a procedural bar to relief. *McQuiggin v. Perkins*, 569 U.S. 383, 133 S. Ct. 1924, 1931, 185 L. Ed. 2d 1019 (2013). "This rule, or fundamental miscarriage of justice exception, is grounded in the 'equitable discretion' of habeas courts to see that federal constitutional errors do not result in the incarceration of innocent persons." *Id.* (quoting *Herrera v. Collins*, 506 U.S.390, 404, 113 S. Ct. 853, 122 L. Ed. 2d 203 (1993)). A habeas petitioner, who seeks to surmount a procedural default through a showing of "actual innocence" must support his allegations with "new, reliable evidence" that was not presented in the underlying proceedings and must show that it was more likely than not that, in light of the new evidence, (2018 U.S. Dist. LEXIS 5) no fact finder, acting reasonably, would have found the petitioner guilty beyond a reasonable doubt. *See Schlup v. Delo*, 513 U.S. 298, 326-27, 115 S. Ct. 851, 130 L. Ed. 2d 808 (1995); *see also House v. Bell*, 547 U.S. 518, 126 S. Ct. 2064, 165 L. Ed. 2d 1 (2006) (discussing at length the evidence presented by the petitioner in support of an **actual-innocence exception** to the doctrine of procedural default). "Actual innocence" in this context refers to factual innocence and not mere legal sufficiency. *Bousley v. United States*, 523 U.S. 614, 623-624, 118 S. Ct. 1604, 140 L. Ed. 2d 828 (1998).

© 2019 Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved. Use of this product is subject to the restrictions and terms and conditions of the Matthew Bender Master Agreement.

43310037

The Seventh Circuit has recognized that "[a]bandonment by counsel" can constitute one of those "extraordinary circumstances" that can stand in a petitioner's way and prevent him from timely filing his petition. Schmid v. McCauley, 825 F.3d 348, 350 (7th Cir. 2016) (citing Maples v. Thomas, 565 U.S. 266, 132 S. Ct. 912, 181 L. Ed. 2d 807 (2012), in which the Supreme Court concluded that the petitioner did not have functioning counsel during the pendency of his state post-conviction motion, because two of his lawyers left their law firm while the petition was pending, without telling him, and the local counsel agreed to appear only to move{2018 U.S. Dist. LEXIS 28} the other two lawyers into the court *pro hac vice*). The Seventh Circuit also has acknowledge that "inability to access vital papers" can constitute such an "extraordinary circumstance." Id. (citing Socha, 763 F.3d 674), in which the Seventh Circuit found that a petitioner's continual and fruitless efforts to get his legal documents from his lawyer supported equitable tolling).

© 2019 Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved. Use of this product is subject to the restrictions and terms and conditions of the Matthew Bender Master Agreement.

43310037

Patrick Byers
United States Penitentiary
P.O. Box 2068
Inez, KY 41224
(USP Big Sandy)



MAIL CLEARED
US MARSHAL



CERTIFIED MAIL®

PLACE STICKER AT TOP OF ENVELOPE TO THE RIGHT
OF THE RETURN ADDRESS, FOLD AT DOTTED LINE

7021 0350 0000 6940 9299

⇔43310-037⇔
Clerk Of The Court---
US District Court
750 Missouri AVE
ROOM 104
E Saint Louis, IL 62201
United States

